No. 25-10842

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

UNITED STATES OF AMERICA ex rel. CHERYL TAYLOR,

Plaintiff-Appellee/Cross-Appellant, and

UNITED STATES OF AMERICA,

Intervenor-Appellee/Cross-Appellant,

v.

HEALTHCARE ASSOCIATES OF TEXAS L.L.C.,

Defendant-Appellant/Cross-Appellee.

On Appeal from the United States District Court
for the Northern District of Texas

**BRIEF FOR INTERVENOR-APPELLEE/CROSS-APPELLANT
UNITED STATES OF AMERICA**

BRETT A. SHUMATE
  *Assistant Attorney General*

RYAN RAYBOULD
  *United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*

# CERTIFICATE OF INTERESTED PERSONS

*United States ex rel. Taylor v. Healthcare Associates of Texas L.L.C.*

A certificate of interested persons is not required under Fifth Circuit

Rule 28.2.1 because the United States is a governmental party.

*/s/ Daniel Winik*
Daniel Winik

## STATEMENT REGARDING ORAL ARGUMENT

The district court in this case applied the Excessive Fines Clause to hold the False Claims Act's civil-penalty provision unconstitutional as applied. Oral argument is warranted given the significance of that holding. The Article II issue, however, is squarely governed by circuit precedent.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

STATEMENT REGARDING ORAL ARGUMENT .......................................... ii

TABLE OF AUTHORITIES ................................................................................ v

STATEMENT OF ISSUES ................................................................................. 1

STATEMENT OF THE CASE ............................................................................ 1

    A.    Statutory Background ........................................................................ 1

    B.    This Action ......................................................................................... 4

SUMMARY OF ARGUMENT ........................................................................... 7

STANDARD OF REVIEW ................................................................................ 9

ARGUMENT ....................................................................................................... 10

I.    The False Claims Act's Qui Tam Provisions Are Consistent With Article II ............................................................................................ 10

    A.    Relators Need Not Be Appointed In The Manner Prescribed By The Appointments Clause ..................................... 13

        1.    Relators do not occupy continuing positions .................... 14

        2.    Congress did not vest relators with uniquely governmental authority ........................................................ 18

    B.    The Qui Tam Provisions Do Not Violate The Vesting And Take Care Clauses ................................................................... 22

II.    The District Court Erred By Not Imposing The Statutorily Required Penalty ...................................................................................... 30

CONCLUSION ............................................................................................. 50

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Adams v. Woods,*
6 U.S. (2 Cranch) 336 (1805)............................................................26

*Alyeska Pipeline Service Co. v. Wilderness Society,*
421 U.S. 240 (1975) ........................................................................20

*Austin v. United States,*
509 U.S. 602 (1993) ........................................................................30

*Ayotte v. Planned Parenthood of Northern New England,*
546 U.S. 320 (2006) ........................................................................21

*BMW of North America, Inc. v. Gore,*
517 U.S. 559 (1996) ........................................................................42

*Bowsher v. Synar,*
478 U.S. 714 (1986) ........................................................................25

*Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,*
492 U.S. 257 (1989) ................................................................. 30, 44

*Cochise Consultancy, Inc. v. United States ex rel. Hunt,*
587 U.S. 262 (2019) ........................................................................19

*Cripps v. Louisiana Department of Agriculture & Forestry,*
819 F.3d 221 (5th Cir. 2016) ................................................... 33, 38

*Cummings v. Premier Rehab Keller, PLLC,*
596 U.S. 212 (2022) ........................................................................23

*Deligdish v. North Brevard County Hospital District,*
2025 WL 2217710 (M.D. Fla. Aug. 5, 2025)....................................12

*Dobbs v. Jackson Women's Health Organization,*
597 U.S. 215 (2022) ........................................................................44

*Fortner Enterprises, Inc. v. U.S. Steel Corp.,*
394 U.S. 495 (1969) ................................................................23

*Gonzalez v. NOAA,*
420 F. App'x 364 (5th Cir. 2011) ............................................... 33, 38

*Gore v. United States,*
357 U.S. 386 (1958) ................................................................32

*Graham v. Connor,*
490 U.S. 386 (1989) ................................................................44

*Hignell-Stark v. City of New Orleans,*
154 F.4th 345 (5th Cir. 2025) ....................................................9

*Hughes Aircraft Co. v. United States ex rel. Schumer,*
520 U.S. 939 (1997) ................................................................19

*Hutto v. Davis,*
454 U.S. 370 (1982) ................................................................38

*Josephs v. Amentum Services Inc.,*
2025 WL 3223772 (D. Md. Nov. 19, 2025)................................12

*Kane v. Select Medical Corp.,*
2025 WL 1726253 (M.D. Fla. June 20, 2025)............................12

*Kenley Emergency Medicine v. Schumacher Group of Louisiana Inc.,*
2025 WL 1359065 (N.D. Cal. May 9, 2025) .............................11

*Lucia v. SEC,*
585 U.S. 237 (2018) ................................................................14

*Marsh v. Chambers,*
463 U.S. 783 (1983) ................................................................25

*Marvin v. Trout,*
199 U.S. 212 (1905) ................................................................ 24, 28

*Mayer v. ADCS Clinics, LLC,*
  2026 WL 369912 (E.D. Pa. Feb. 10, 2026) ......................................................11

*Mistretta v. United States,*
  488 U.S. 361 (1989) ...........................................................................................25

*Morrison v. Olson,*
  487 U.S. 654 (1988) ..................................................................................... 14, 15

*Newell Recycling Co. v. EPA,*
  231 F.3d 204 (5th Cir. 2000) ................................................................. 33, 34, 38

*Proctor v. Wound Care Management, LLC,*
  2025 WL 2444133 (E.D. La. Aug. 25, 2025) ....................................................13

*Riley v. St. Luke's Episcopal Hospital,*
  252 F.3d 749 (5th Cir. 2001) ......................................................... 7, 10, 22, 26

*Rummel v. Estelle,*
  445 U.S. 263 (1980) ..................................................................... 31-32, 38

*Stanton v. Wilkeson,*
  22 F. Cas. 1074 (S.D.N.Y. 1876) ............................................................. 15, 16

*State Farm Mutual Automobile Insurance Co. v. Campbell,*
  538 U.S. 408 (2003) ................................................................ 42, 42-43, 43

*Stop Illinois Health Care Fraud, LLC v. Sayeed,*
  100 F.4th 899 (7th Cir. 2024) ................................................................. 32, 49

*United States v. Aleff,*
  772 F.3d 508 (8th Cir. 2014) ................................................................. 32, 48

*United States v. Bajakajian,*
  524 U.S. 321 (1998) ................................................................. 30, 31, 34, 38

*United States v. Betancourt,*
  422 F.3d 240 (5th Cir. 2005) ........................................................................37

*United States v. Bourseau,*
  531 F.3d 1159 (9th Cir. 2008) ......................................................32

*United States v. Dalcourt,*
  722 F. App'x 385 (5th Cir. 2018) ..................................................39

*United States v. Davis,*
  2026 WL 511147 (5th Cir. Feb. 24, 2026) ........................................37

*United States v. Dennis,*
  41 F.4th 732 (5th Cir. 2022) ................................................ 36, 37

*United States v. Dish Network LLC,*
  954 F.3d 970 (7th Cir. 2020) .........................................................35

*United States v. Donziger,*
  38 F.4th 290 (2d Cir. 2022)................................................ 14-15, 16

*United States v. Germaine,*
  99 U.S. 508 (1879) ......................................................................14

*United States v. Griswold,*
  24 F. 361 (D. Or. 1885) ...............................................................19

*United States v. Haro,*
  753 F. App'x 250 (5th Cir. 2018)..................................................36

*United States v. Harris,*
  566 F.3d 422 (5th Cir. 2009) .......................................................39

*United States v. Hughes,*
  585 F.2d 284 (7th Cir. 1978) .......................................................45

*United States v. Lanier,*
  520 U.S. 259 (1997) ....................................................................44

*United States v. Loe,*
  248 F.3d 449 (5th Cir. 2001) .......................................................36

*United States v. Maurice,*
26 F. Cas. 1211 (C.C.D. Va. 1823) (No. 15,747) ..................................... 14, 15

*United States v. Mora,*
644 F. App'x 316 (5th Cir. 2016) ...................................................... 36, 37-38

*United States v. NEC Corp.,*
11 F.3d 136 (11th Cir. 1993) ..................................................................17

*United States v. 1709 Mitchell Jones,*
173 F. App'x 345 (5th Cir. 2006) .........................................................36

*United States v. Reed,*
908 F.3d 102 (5th Cir. 2018) ................................................................36

*United States v. Rellan Perez,*
2025 WL 1157550 (5th Cir. Apr. 21, 2025) ................................... 36, 38

*United States v. Rogan,*
517 F.3d 449 (7th Cir. 2008) ........................................................... 32, 48

*United States v. $78,882.00 in U.S. Currency,*
464 F. App'x 382 (5th Cir. 2012) .........................................................36

*United States v. Suarez,*
966 F.3d 376 (5th Cir. 2020) .................................................... 6, 36, 37

*United States v. 2004 Ferrari 360 Modeno,*
544 F. App'x 545 (5th Cir. 2013) .........................................................36

*United States v. Wallace,*
389 F.3d 483 (5th Cir. 2004) ................................................................36

*United States v. Weitzel,*
246 U.S. 533 (1918) ...............................................................................14

*United States v. Wyly,*
193 F.3d 289 (5th Cir. 1999) ................................................................36

*United States ex rel. Adams v. Chattanooga Hamilton Cty. Hosp. Auth.*,
  2024 WL 4784372 (E.D. Tenn. Nov. 7, 2024) ...................................................11

*United States ex rel. Adler v. Sporn Co.*,
  2025 WL 1371272 (D. Vt. May 12, 2025) .......................................................11

*United States ex rel. Breslow v. JP Pharma, LLC*,
  2025 WL 3640892 (W.D. Va. Dec. 16, 2025) ...................................................12

*United States ex rel. Bryant v. Comfort Care Hospice, LLC*,
  2026 WL 473999 (M.D. Ala. Feb. 19, 2026) ....................................................11

*United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*,
  741 F.3d 390 (4th Cir. 2013) ...................................................... 32, 45, 49

*United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*,
  970 F.3d 835 (7th Cir. 2020) .......................................................................10

*United States ex rel. Drakeford v. Tuomey*,
  792 F.3d 364 (4th Cir. 2015) ...................................................... 32, 48

*United States ex rel. Eisenstein v. City of New York*,
  556 U.S. 928 (2009) ...................................................................................23

*United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*,
  715 F. Supp. 3d 1133 (D. Minn. 2024)...........................................................47

*United States ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, LLC*,
  157 F.4th 758 (5th Cir. 2025) ......................................................................12

*United States ex rel. Gomez v. Koman Construction, LLC*,
  796 F. Supp. 3d 353 (W.D. Tex. 2025)...........................................................13

*United States ex rel. Gonite v. UnitedHealthcare of Georgia, Inc.*,
  785 F. Supp. 3d 1325 (M.D. Ga. 2025) ..........................................................12

*United States ex rel. Gose v. Native American Services Corp.*,
  2025 WL 1531137 (M.D. Fla. May 29, 2025) ..................................................11

*United States ex rel. Grant v. Zorn*,
107 F.4th 782 (8th Cir. 2024) ...................................................................... 46, 47

*United States ex rel. Heath v. Wisconsin Bell, Inc.*,
808 F. Supp. 3d 917 (E.D. Wis. 2025) .............................................................12

*United States ex rel. Kelly v. Boeing Co.*,
9 F.3d 743 (9th Cir. 1993).................................................................................10

*United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*,
985 F.2d 1148 (2d Cir. 1993)............................................................................10

*United States ex rel. Marcus v. Hess*,
317 U.S. 537 (1943) ................................................................................ 19, 24, 28

*United States ex rel. McCullough v. Anthem Insurance Cos.*,
2025 WL 2782576 (S.D. Ind. Sept. 30, 2025).................................................11

*United States ex rel. Montcrief v. Peripheral Vascular Associates, P.A.*,
133 F.4th 395 (5th Cir. 2025) ...................................................................... 12-13

*United States ex rel. Permenter v. eClinicalWorks, LLC*,
2025 WL 1762264 (M.D. Ga. June 25, 2025)..................................................12

*United States ex rel. Polansky v. Executive Health Resources, Inc.*,
599 U.S. 419 (2023) .................................................................................. 4, 18, 21

*United States ex rel. Publix Litig. P'ship, LLP v. Publix Super Mkts., Inc.*,
2025 WL 2468832 (M.D. Fla. Aug. 27, 2025)..................................................12

*United States ex rel. Relator LLC v. Pape*,
2025 WL 3707557 (N.D. Cal. Dec. 22, 2025)............................................ 11-12

*United States ex rel. Shepherd v. Fluor Corp.*,
2026 WL 97279 (D.S.C. Jan. 14, 2026) ...........................................................11

*United States ex rel. Souza v. Embrace Home Loans, Inc.*,
808 F. Supp. 3d 314 (D.R.I. 2025) ...................................................................12

*United States ex rel. Spicer v. Westbrook,*
751 F.3d 354 (5th Cir. 2014) ...............................................................17

*United States ex rel. Stone v. Rockwell International Corp.,*
282 F.3d 787 (10th Cir. 2002) ............................................................10

*United States ex rel. Sullivan v. Murphy Medical Center, Inc.,*
2026 WL 657192 (E.D. Tenn. Mar. 9, 2026) ......................................11

*United States ex rel. Taxpayers Against Fraud v. General Electric Co.,*
41 F.3d 1032 (6th Cir. 1994) ....................................................... 10, 19

*United States ex rel. Zafirov v. Florida Medical Associates, LLC,*
751 F. Supp. 3d 1293 (M.D. Fla. 2024) ................................... 11, 14, 16

*Vanderbilt Mortgage & Finance, Inc. v. Flores,*
692 F.3d 358 (5th Cir. 2012) ......................... 33, 38, 41, 43, 44, 45, 46

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
529 U.S. 765 (2000) ...............................2, 4, 16, 18, 23, 24-25, 25, 26

*Yates v. Pinellas Hematology & Oncology, P.A.,*
21 F.4th 1288 (11th Cir. 2021) ................................................ 32, 45, 49

*Youngstown Sheet & Tube Co. v. Sawyer,*
343 U.S. 579 (1952) ............................................................................26

## U.S. Constitution:

Art. II, § 1, cl. 1 ...............................................................................22

Art. II, § 2, cl. 2 ...............................................................................13

Art. II, § 3 ........................................................................................22

## Statutes:

Act of July 20, 1790, ch. 29, §§ 1, 4, 1 Stat. 131...............................25

Act of July 22, 1790, ch. 33, § 3, 1 Stat. 137 ................................................25

Act of Mar. 1, 1790, ch. 2, § 3, 1 Stat. 101 ...............................................25

Act of Mar. 2, 1863, ch. 67, §§ 4, 6, 12 Stat. 696 ........................................2

15 U.S.C. § 15 ...............................................................................................22

18 U.S.C. § 982 .............................................................................................37

28 U.S.C. § 2403(a) .........................................................................................1

31 U.S.C. § 3729 *et seq.* ...................................................................................1

31 U.S.C. § 3729(a)(1) ............................................................................ 4, 33

31 U.S.C. § 3729(a)(1)(A) ............................................................................1

31 U.S.C. § 3729(a)(1)(B) ............................................................................2

31 U.S.C. § 3729(b)(2)(A)(i) .......................................................................2

31 U.S.C. § 3730 ........................................................................................1, 5

31 U.S.C. § 3730(a) .......................................................................................2

31 U.S.C. § 3730(b)(1) ........................................................................ 2, 3, 19

31 U.S.C. § 3730(b)(2) ..................................................................................2

31 U.S.C. § 3730(b)(2)-(4) ..........................................................................20

31 U.S.C. § 3730(b)(3) ..................................................................................2

31 U.S.C. § 3730(b)(4)(A) ............................................................................3

31 U.S.C. § 3730(b)(4)(B) ............................................................................3

31 U.S.C. § 3730(b)(5) ................................................................................16

31 U.S.C. § 3730(c)(1) ..................................................................................3

31 U.S.C. § 3730(c)(2)(A)................................................................4

31 U.S.C. § 3730(c)(2)(B) ...............................................................4

31 U.S.C. § 3730(c)(3) ....................................................................3

31 U.S.C. § 3730(c)(4) ....................................................................3

31 U.S.C. § 3730(c)(5) ....................................................................3

31 U.S.C. § 3730(d) .........................................................................4

31 U.S.C. § 3730(d)(1)-(2)............................................................24

31 U.S.C. § 3731(c) ..........................................................................3

42 U.S.C. § 2000e-5(f) ...................................................................22

**Regulations:**

28 C.F.R. § 85.3(a)(9)................................................................ 4, 33

28 C.F.R. § 85.5, tbl. 1 .............................................................. 4, 33

**Rule:**

Fed. R. Civ. P. 41.........................................................................21

**Other Authorities:**

*Fees of Courts, Communicated to the House of Representatives, January 12, 1795*,
   *in* 1 *American State Papers: Class X, Miscellaneous* 117
   (William S. Hein & Co. 1998), https://perma.cc/JGR5-8AQA.................27

Martha S. Jones,
   *Time, Space, and Jurisdiction in Atlantic World Slavery*,
   29 L. & Hist. Rev. 1031 (2011) .......................................................26

Letter from Elizabeth B. Prelogar, Solic. Gen., to the Hon. Mike Johnson, Speaker, U.S. House of Reps. (July 24, 2024) ...............................................47

Letter from Sarah M. Harris, Acting Solic. Gen., to the Hon. Mike Johnson, Speaker, U.S. House of Reps. (Feb. 24, 2025), https://perma.cc/BU34-UGUC..................................................................47

*Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73 (2007) ...............................................................................15

## STATEMENT OF ISSUES

This is a qui tam action under the False Claims Act, brought by relators and pursued by them after the government decided not to take over the litigation under 31 U.S.C. § 3730. The government intervened in this Court, under 28 U.S.C. § 2403(a), for the limited purpose of defending the Act's constitutionality. This brief accordingly addresses two issues.

First, as appellee: Whether the district court, applying circuit precedent, correctly held that the qui tam provisions of the False Claims Act are consistent with Article II.

Second, as cross-appellant: Whether the district court erred in concluding that the Excessive Fines Clause precluded the imposition of the minimum statutorily required civil penalty.

## STATEMENT OF THE CASE

### A. Statutory Background

The False Claims Act, 31 U.S.C. § 3729 *et seq.*, imposes civil liability for a variety of deceptive practices involving government funds and property. The Act renders liable, for example, any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," *id.* § 3729(a)(1)(A), and any person who "knowingly makes, uses, or

causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B).  The Act defines a "'claim'" to include "any request or demand … for money or property [that] … is presented to an officer, employee, or agent of the United States."  *Id.* § 3729(b)(2)(A)(i).

When Congress enacted the statute in 1863, it followed a "long tradition … in England and the American Colonies," *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000), by incorporating qui tam provisions authorizing private persons to bring suit to redress frauds against the United States.  Act of Mar. 2, 1863, ch. 67, §§ 4, 6, 12 Stat. 696, 698.  The current version of the Act retains the basic structure of the qui tam mechanism.  The Attorney General may bring a civil action to recover treble damages and civil penalties for a violation of the Act.  *See* 31 U.S.C. § 3730(a).  Alternatively, a private person known as a relator may bring suit, "for the person and for the United States Government," "in the name of the Government."  *Id.* § 3730(b)(1).  The relator's complaint must be filed under seal and served on the United States.  *Id.* § 3730(b)(2).  The government then has 60 days, subject to extension, to decide whether to intervene and take over the suit.  *Id.* § 3730(b)(2), (3).

If the government intervenes—either before the complaint is unsealed or "at a later date upon a showing of good cause," 31 U.S.C. § 3730(c)(3)—then "the action shall be conducted by the Government," *id.* § 3730(b)(4)(A); *see id.* § 3730(c)(1) (government "shall have the primary responsibility for prosecuting the action"). The government may file its own complaint or may amend the relator's complaint to add or alter claims. *Id.* § 3731(c).

If the government declines to intervene, then "the person bringing the action shall have the right to conduct the action." 31 U.S.C. § 3730(b)(4)(B). But the government retains considerable control over such actions. For example, the government is entitled to receive "copies of all pleadings filed in the action and … all deposition transcripts." *Id.* § 3730(c)(3). It may stay discovery to avoid "interfere[nce]" with a related governmental investigation or prosecution. *Id.* § 3730(c)(4). It may "elect to pursue its claim through any alternate remedy available to [it], including any administrative proceeding to determine a civil money penalty." *Id.* § 3730(c)(5). It may veto a relator's proposed dismissal or settlement of the action. *Id.* § 3730(b)(1). And on a showing of good cause, it may intervene in the action even after having

previously chosen not to do so, including for the purpose of seeking to dismiss the action over the relator's objection. *Id.* § 3730(c)(2)(A), (B); *see United States ex rel. Polansky v. Executive Health Res., Inc.*, 599 U.S. 419 (2023).

The Act specifies that "any person who" commits a violation "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1) (footnote and citations omitted). Those penalties are "per claim." *Stevens*, 529 U.S. at 769. For violations on or before November 2, 2015, the inflation-adjusted minimum penalty is $5,500 per claim, and the inflation-adjusted maximum is $11,000 per claim. 28 C.F.R. § 85.3(a)(9). For violations after that date, the inflation-adjusted minimum penalty is higher and depends on the date on which the penalty is imposed. *Id.* § 85.5, tbl. 1. If a qui tam action results in any monetary recovery, an eligible relator is entitled to a share of the recovery. 31 U.S.C. § 3730(d).

**B.     This Action**

1.      In 2019, relator Cheryl Taylor brought this qui tam action under the False Claims Act against Healthcare Associates of Texas (HCAT) and

several codefendants, alleging that they had engaged in fraudulent Medicare billing practices. ROA.82-110. The government declined to intervene and take over the action under 31 U.S.C. § 3730. ROA.111-113.

The case proceeded to trial. The jury found that HCAT, though not its codefendants, had violated the False Claims Act. ROA.5905. The jury found that HCAT was responsible for 21,844 false claims, ROA.5913, and it found the amount of the government's damages from those false claims to be $2,753,641.86, ROA.5920.[1]

2. Relator moved for the entry of judgment on the verdict. The district court determined that the evidence was sufficient to support the jury's findings as to the number of false claims for which HCAT was responsible (21,844) and the amount of damages that those false claims had caused the government ($2,753,641.86). ROA.6043-6049. And the court recognized that, given the number of claims found to have been false, "[t]he minimum penalty under the statute" would be $299,197,200. ROA.6050. The court concluded, however, that the imposition of that statutorily prescribed penalty

---

[1] The jury also found that all of the defendants had conspired to violate the False Claims Act. ROA.5915. The district court, however, later dismissed the conspiracy claims as a matter of law. ROA.6041-6043.

would violate the Excessive Fines Clause of the Eighth Amendment. ROA.6049-6055.

In reaching that conclusion, the court applied a four-factor standard, examining "'(a) the essence of the defendant's crime and its relationship to other criminal activity; (b) whether the defendant was within the class of people for whom the statute of conviction was principally designed; (c) the maximum sentence, including the fine that could have been imposed; and (d) the nature of the harm resulting from the defendant's conduct.'" ROA.6052 (quoting *United States v. Suarez*, 966 F.3d 376, 385 (5th Cir. 2020)). As to the first factor, the court concluded that while HCAT had engaged in "significant" misconduct—"submitting claims as incident to a physician's care without proper documentation, submitting claims for services by providers not yet eligible to bill Medicare, and submitting claims for services performed by medical assistants instead of qualified providers"—HCAT did not bill "for services that were never performed," and its misconduct was "closer in gravity to something like a 'reporting offense.'" ROA.6052-6053. As to the second factor, the court acknowledged that "HCAT is certainly within the class of people for whom the [False Claims Act] was principally designed." ROA.6053. As to the third factor, the court recognized that "the

minimum civil penalty is, of course, below the maximum that could have been imposed under the statute," but found this factor "not very useful" given its view that "even the minimum statutory amount itself presents an excessive fines issue." ROA.6053. Finally, as to the fourth factor, the court determined the statutory minimum penalty to be "vastly out of alignment with the harm to the government in this case," and "with the ratios in other similar cases," because it "would amount to over one hundred times the amount of actual monetary damages." ROA.6053-6054.

3. Defendants then moved for a new trial or judgment as a matter of law on various grounds, including that the qui tam provisions of the False Claims Act are inconsistent with Article II. The district court rejected that argument as "foreclosed by binding Fifth Circuit precedent." ROA.8875 (citing *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 758 (5th Cir. 2001) (en banc)).

## SUMMARY OF ARGUMENT

I. The False Claims Act's qui tam provisions are consistent with Article II, as this Court and every other court of appeals to have addressed the issue has held.

A.     Qui tam relators need not be appointed in the manner prescribed by the Appointments Clause because they have none of the indicia of office-holders within the meaning of the Appointments Clause.  They do not occupy continuing positions; rather, their roles are limited in time and scope, confined to a particular case, and fundamentally personal in nature.  And Congress did not vest them with uniquely governmental authority.

B.     Nor do the qui tam provisions violate the Vesting and Take Care Clauses.  Congress has the power to authorize private parties who have suffered Article III injury to sue to enforce federal statutes.  Qui tam suits under the False Claims Act do differ in some significant respects from private suits under other statutes, and if Congress's use of the qui tam mechanism were a new development, these features of qui tam suits would give rise to substantial questions about whether they are consistent with the Vesting and Take Care Clauses.  But any such doubts are resolved by the extensive body of evidence that qui tam provisions have, since the Founding, been understood as established features of American law.

II.     The district court erred in concluding that the Excessive Fines Clause precluded it from imposing the minimum statutorily required civil penalty.  A monetary penalty violates the Excessive Fines Clause only if it

bears no relationship to the gravity of the misconduct it punishes. Under that deferential standard, the federal courts of appeals have almost uniformly upheld the constitutionality of civil penalties within the statutorily authorized range in False Claims Act cases. And there is no proper basis here to conclude that the statutory minimum penalty for the claims the jury found to have been false violates the constitutional standard. Indeed, this Court has held that statutorily specified penalties are constitutional.

The district court's contrary ruling applied the sort of ratio-based analysis that the Supreme Court has articulated for determining whether jury punitive-damages awards are consistent with the Due Process Clause. But the due-process standard does not apply to the review of statutorily prescribed penalties under the Excessive Fines Clause, and it is particularly inapposite to penalties for fraud.

**STANDARD OF REVIEW**

"'A district court's judgment concerning a statute's constitutionality is reviewed *de novo.*'" *Hignell-Stark v. City of New Orleans*, 154 F.4th 345, 352 (5th Cir. 2025).

## ARGUMENT

## I. The False Claims Act's Qui Tam Provisions Are Consistent With Article II

Every court of appeals to have addressed the question, including this one, has held that the False Claims Act's qui tam provisions are consistent with Article II. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753-758 (5th Cir. 2001) (en banc); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 804-807 (10th Cir. 2002); *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1040-1042 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 749-759 (9th Cir. 1993); *see also United States ex rel. CIMZNHCA, LLC v. UCB, Inc.*, 970 F.3d 835, 847 (7th Cir. 2020) (the "ancient pedigree" of qui tam actions, "together with their widespread use at the time of the Founding, suggests that the False Claims Act as a whole is not in imminent danger of unconstitutionally usurping the executive power"); *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155 (2d Cir. 1993) (explaining, in rejecting an Article III challenge, that the qui tam "provisions do not usurp the executive branch's litigating function").

So has nearly every district court that has addressed the question, with the exception of a single court that has held the qui tam provisions invalid within the past year and a half. *United States ex rel. Zafirov v. Florida Med. Assocs., LLC*, 751 F. Supp. 3d 1293 (M.D. Fla. 2024); *see United States ex rel. Gose v. Native Am. Servs. Corp.*, 2025 WL 1531137 (M.D. Fla. May 29, 2025) (same judge, relying on *Zafirov*). The *Zafirov* decision is on appeal before the Eleventh Circuit (Nos. 24-13581, -13583, argued December 12, 2025), and numerous courts have criticized it as unpersuasive. *See United States ex rel. Shepherd v. Fluor Corp.*, 2026 WL 97279, at *6-8 (D.S.C. Jan. 14, 2026); *United States ex rel. McCullough v. Anthem Ins. Cos.*, 2025 WL 2782576, at *15-16 (S.D. Ind. Sept. 30, 2025); *United States ex rel. Adler v. Sporn Co.*, 2025 WL 1371272, at *17 (D. Vt. May 12, 2025); *Kenley Emergency Med. v. Schumacher Grp. of La. Inc.*, 2025 WL 1359065, at *5 (N.D. Cal. May 9, 2025); *United States ex rel. Adams v. Chattanooga Hamilton Cty. Hosp. Auth.*, 2024 WL 4784372, at *3 (E.D. Tenn. Nov. 7, 2024); *see also United States ex rel. Sullivan v. Murphy Med. Ctr., Inc.*, 2026 WL 657192, at *15 (E.D. Tenn. Mar. 9, 2026) (declining to follow *Zafirov*); *United States ex rel. Bryant v. Comfort Care Hospice, LLC*, 2026 WL 473999, at *6 (M.D. Ala. Feb. 19, 2026) (same); *Mayer v. ADCS Clinics, LLC*, 2026 WL 369912, at *2-7 (E.D. Pa. Feb. 10, 2026) (same); *United States ex rel.*

- 11 -

*Relator LLC v. Pape*, 2025 WL 3707557, at *4 (N.D. Cal. Dec. 22, 2025) (same);

*United States ex rel. Breslow v. JP Pharma, LLC*, 2025 WL 3640892, at *21-26

(W.D. Va. Dec. 16, 2025) (same)*; Josephs v. Amentum Servs. Inc.*, 2025 WL

3223772, at *12-14 (D. Md. Nov. 19, 2025) (same); *United States ex rel. Souza v.*

*Embrace Home Loans, Inc.*, 808 F. Supp. 3d 314, 330 n.1 (D.R.I. 2025) (same);

*United States ex rel. Heath v. Wisconsin Bell, Inc.*, 808 F. Supp. 3d 917, 933-935

(E.D. Wis. 2025) (same); *United States ex rel. Publix Litig. P'ship, LLP v. Publix*

*Super Mkts., Inc.*, 2025 WL 2468832, at *3 (M.D. Fla. Aug. 27, 2025) (same);

*Deligdish v. North Brevard Cty. Hosp. Dist.*, 2025 WL 2217710, at *12 (M.D. Fla.

Aug. 5, 2025) (same); *United States ex rel. Permenter v. eClinicalWorks, LLC*,

2025 WL 1762264, at *11 (M.D. Ga. June 25, 2025) (same); *Kane v. Select Med.*

*Corp.*, 2025 WL 1726253, at *1 n.1 (M.D. Fla. June 20, 2025) (same); *United*

*States ex rel. Gonite v. UnitedHealthcare of Ga., Inc.*, 785 F. Supp. 3d 1325, 1335-

1336 (M.D. Ga. 2025) (same).

And in this Circuit, multiple district courts—and multiple members of

this Court—have recognized that *Riley* compels the rejection of the argu-

ments accepted in *Zafirov*. *See United States ex rel. Gentry v. Encompass Health*

*Rehab. Hosp. of Pearland, LLC*, 157 F.4th 758, 766-767 (5th Cir. 2025) (Ho, J.,

concurring); *United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*,

133 F.4th 395, 410 (5th Cir. 2025) (Duncan, J., concurring); *Proctor v. Wound Care Mgmt., LLC*, 2025 WL 2444133, at *2-3 (E.D. La. Aug. 25, 2025); *United States ex rel. Gomez v. Koman Constr., LLC*, 796 F. Supp. 3d 353, 385 (W.D. Tex. 2025).

The panel should decline HCAT's suggestion to call for *Riley* to be reconsidered by the en banc Court. For the reasons discussed below, this Court was correct to hold in *Riley* that the False Claims Act's qui tam provisions are consistent with Article II, and rehearing en banc is unwarranted.

### A. Relators Need Not Be Appointed In The Manner Prescribed By The Appointments Clause

HCAT contends that the qui tam provisions are inconsistent with the Appointments Clause, which specifies the permissible means of appointing "Officers of the United States" to public offices "established by Law." U.S. Const. art. II, § 2, cl. 2. But relators possess none of the indicia of officeholders within the meaning of the Appointments Clause: Their roles are limited in time and scope, confined to a particular case, and fundamentally personal in nature.

**1. Relators do not occupy continuing positions**

To be an "Officer of the United States" subject to the Appointments Clause, a person "must occupy a 'continuing' position established by law." *Lucia v. SEC*, 585 U.S. 237, 245 (2018). This requirement derives from the Supreme Court's decision in *United States v. Germaine*, 99 U.S. 508 (1879), which "held that 'civil surgeons' (doctors hired to perform various physical exams) were mere employees," as opposed to officers, "because their duties were 'occasional or temporary' rather than 'continuing and permanent.'" *Lucia*, 585 U.S. at 245 (quoting *Germaine*, 99 U.S. at 508, 512). A hallmark of an office is that its "duties continue, though the person" occupying it "be changed." *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823) (No. 15,747) (Marshall, C.J.). Relators' roles, in contrast, are limited in time and scope rather than continuing from officeholder to officeholder over time.

The district court in *Zafirov* likened relators to independent counsels, 751 F. Supp. 3d at 1308, 1314-1315, or bank receivers, *id.* at 1315, who have been held to be officers even though their roles were temporary. *See, e.g., Morrison v. Olson*, 487 U.S. 654, 671 n.12 (1988) (independent counsel); *United States v. Weitzel*, 246 U.S. 533, 541 (1918) (bank receiver); *United States v.*

*Donziger*, 38 F.4th 290, 296-299 (2d Cir. 2022) (special prosecutor). HCAT makes the same point (Br. 67-68). But those roles, unlike relators' roles, were not specific to the individuals appointed to perform them. Even though they were temporary, they were continuing in the crucial sense that their "duties" would "continue" even "though the person" performing them "be changed." *Maurice*, 26 F. Cas. at 1214. As the Supreme Court explained, Alexia Morrison was not even the first person to hold her independent counsel office: The court that appointed her had initially appointed James McKay, who had resigned and been replaced by her. *Morrison*, 487 U.S. at 667. Her role was thus clearly "continuing" even though it was not permanent. The duties of a bank receiver were likewise not limited to performance by a single individual. *See Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 111 (2007). If a given person appointed to act as a receiver became unable to perform his duties, that would not negate the need for a receivership; it would simply require the appointment of another receiver in place of the first. In *Stanton v. Wilkeson*, 22 F. Cas. 1074 (S.D.N.Y. 1876), another bank-receiver case, the court made this point clear when explaining that "[v]acation of office by the comptroller" of the

currency, who delegated authority to the receiver, would not "vacate the receivership." *Id.* at 1074-1075. And in *Donziger*, the Second Circuit—citing *Maurice*—specifically based its conclusion that a special prosecutor was an officer on the premise that "the individuals appointed as special prosecutors could be replaced without the duties of the positions terminating." 38 F.4th at 297.

The role of a relator is nothing like that. If a particular relator who has blown the whistle on a fraud by filing a qui tam action decides she is no longer interested in pursuing the action, another person cannot simply take her place as relator. The False Claims Act states expressly that "[w]hen a person brings an action under" the qui tam provisions, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). HCAT cites *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771-774 (2000), for the proposition that relators "may be replaced in their duties by others" (Br. 66-67), but *Stevens* says no such thing.

The district court in *Zafirov* suggested that the role of relator is continuing because any person can be a relator if she satisfies the statutory prerequisites. 751 F. Supp. 3d at 1314. HCAT makes the same point (Br. 67). But

whether multiple people can hold the so-called office of "relator" at any given time has no bearing on whether that role is continuing. What matters is whether the duty—here, the duty of litigating a *particular* qui tam action—can continue from inhabitant to inhabitant of that office, and it clearly cannot. A relator's pursuit of a qui tam action is personal to that relator and not transferable from relator to relator. The fact that an individual can serve as a relator in a particular qui tam case for years is likewise irrelevant to whether a role is continuing in the relevant sense—*i.e.*, whether the duties of the role can be passed from one person who occupies the role to the next.

It is true that a relator's qui tam action survives her death and may be pursued by her estate's personal representative, just as the estates of deceased plaintiffs routinely maintain other types of actions personal to the deceased plaintiff. *United States v. NEC Corp.*, 11 F.3d 136, 139 (11th Cir. 1993); *see also United States ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014) (bankruptcy trustee, as opposed to new relator, can assert False Claims Act claims belonging to relator's bankruptcy estate). But that does not mean a relator's role is continuing in the relevant sense. To the contrary, it underscores that a relator's role is personal and unlike that of an actual office. The

duties of an actual office—that of the Attorney General, for example—are not personal and thus cannot be carried on by the official's personal estate.

### 2. Congress did not vest relators with uniquely governmental authority

Relators are also not officeholders subject to the Appointments Clause because Congress envisioned their roles as fundamentally personal rather than governmental in nature. In *Stevens*, the Supreme Court expressly rejected the idea that relators have Article III standing to pursue suits under the False Claims Act because they serve as agents of the United States. 529 U.S. at 772. Rather, the Court held that relators have standing on the ground that the Act "can reasonably be regarded as effecting a partial assignment of the Government's damages claim" by entitling the relator to a share of any ultimate recovery. *Id.* at 773; *see United States ex rel. Polansky v. Executive Health Res., Inc.*, 599 U.S. 419, 425 (2023) (similar). And in another part of the opinion holding that relators cannot pursue qui tam actions against States, the Court emphasized that such actions are "private suit[s]" brought by "private parties." *Stevens*, 529 U.S. at 780 n.9, 786 n.17.

*Stevens* thus recognized that when Congress authorized relators to bring qui tam suits under the False Claims Act, it did not intend to create a

governmental office subject to the Appointments Clause. Rather, Congress was authorizing relators to pursue a personal monetary recovery—employing "the theory, based on experience as old as modern civilization, that one of the least expensive and most effective means of preventing frauds on the treasury is to make the perpetrators of them liable to actions by private persons acting … under … the hope of gain." *United States v. Griswold*, 24 F. 361, 366 (D. Or. 1885), *quoted in United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n.5 (1943), *and Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 949 (1997).

That a relator brings a qui tam suit "in the name of the Government," 31 U.S.C. § 3730(b)(1), does not alter the nature of the relator's interest in the suit. The Supreme Court explained in *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262 (2019), that the statutory provision for qui tam actions to be brought "'for the [relator] and for the … Government,'" and "'in the name of the Government,' … does not make the relator anything other than a private person" as opposed to an "'official of the United States.'" *Id.* at 272; *see also, e.g.*, *Taxpayers Against Fraud*, 41 F.3d at 1041 ("Although a relator may sue in the government's name, the relator is not vested with governmental power.").

It is thus clear that Congress placed relators outside the Executive Branch.  That is not, by itself, dispositive of the Appointments Clause challenge:  Congress cannot circumvent the Appointments Clause by placing outside the government functions that only the government can constitutionally perform, like the adoption of binding rules governing private conduct on a continuing basis.

Relators, however, do not perform a function that only the government can constitutionally perform.  Congress routinely chooses "to rely … on private enforcement to implement public policy." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 263 (1975).  And relators have no independent power to litigate qui tam actions on the government's behalf.  Relators can *file* qui tam actions, under seal.  But a qui tam action cannot proceed—indeed, it cannot even be unsealed—until after the government has had an opportunity to determine whether to "intervene and proceed with the action," intervene and move to dismiss it, or allow the relator "to conduct the action" subject to ongoing government oversight.  31 U.S.C. § 3730(b)(2)-(4).  The government thus retains absolute control over the action.  If the government exercises its right to intervene at the outset, it can dismiss the action under

Federal Rule of Civil Procedure 41 with "no adjudicatory role" for the district court. *Polansky*, 599 U.S. at 436 n.4. And if the government does not take that course at the outset, it can still do so at any later point. "[P]ost-seal intervention requires a showing of good cause," but that "'uniquely flexible and capacious'" standard can be satisfied simply by the government's determination that the disadvantages to the government and the public of continued qui tam litigation outweigh the advantages. *Id.* at 429 n.2. And when the government intervenes after the seal period and moves to dismiss the suit over the relator's objection, district courts must grant dismissal "in all but the most exceptional cases … even if the relator presents a credible assessment" that the public benefits of the litigation outweigh its burdens. *Id.* at 437-438.[2]

In short, the only unilateral power that relators have is to *file* the initial qui tam complaint. And as further discussed below, there is abundant historical evidence, including from the Founding era, that this limited action

___

[2] Even if the statute's limited constraints on the government's ability to control qui tam litigation raised constitutional concerns, the right remedy would be to hold those constraints invalid and sever them from the remainder of the statute, not to hold the entirety of the qui tam provisions unconstitutional. *See, e.g.*, *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-329 (2006).

has never been understood as a function only the government can constitutionally perform.

For all these reasons, relators need not be appointed in a manner consistent with the Appointments Clause.

**B.     The Qui Tam Provisions Do Not Violate The Vesting And Take Care Clauses**

The qui tam provisions are likewise consistent with the Vesting and Take Care Clauses of Article II, which state that "[t]he executive Power shall be vested in a President of the United States," U.S. Const. art. II, § 1, cl. 1, and that the President "shall take Care that the Laws be faithfully executed," *id.* § 3.

Article II "does not require Congress to prescribe litigation by the Executive as the *exclusive* means of" protecting the government's interests. *Riley*, 252 F.3d at 753. Rather, Congress unquestionably has the power to authorize private parties who have suffered Article III injury to sue to enforce federal statutes, like Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), or the antitrust laws, 15 U.S.C. § 15. Private suits under such provisions generally do not raise Article II concerns even if Congress has

created a private right of action for the purpose of supplementing government enforcement actions.  The Supreme Court has routinely described private suits as a means of enforcing federal statutes for the benefit of the public, not just as a means of redressing private injuries.  *See, e.g.*, *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 218 (2022) ("'[P]rivate individuals may sue to enforce' … antidiscrimination statutes[.]"); *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 502 (1969) ("Congress has encouraged private antitrust litigation not merely to compensate those who have been directly injured but also to vindicate the important public interest in free competition.").

Qui tam suits under the False Claims Act do differ in some significant respects from private suits under other statutes.  Relators are authorized to pursue False Claims Act suits solely on the basis of the government's partial assignment of a share of its right to a monetary recovery, *see Stevens*, 529 U.S. at 773, whereas private plaintiffs under other statutes must establish a personal injury as a basis for standing.  A judgment on the merits in a qui tam action under the False Claims Act can have claim-preclusive effect against the United States, *see United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 936 (2009), whereas judgments in private suits under other statutes

do not.  And the United States receives a share (indeed, the majority) of any monetary judgment in a qui tam action under the False Claims Act, *see* 31 U.S.C. § 3730(d)(1)-(2), whereas judgments in private suits under other statutes are payable solely to the plaintiffs.  If Congress's use of the qui tam mechanism were a new development, these features of qui tam actions under the False Claims Act would give rise to substantial questions about whether such actions are consistent with the Vesting and Take Care Clauses.

Those questions are resolved, however, by the extensive body of evidence that qui tam provisions have, since the Founding, been understood as established features of American law.  "'Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our Government[.]'" *Hess*, 317 U.S. at 541 n.4 (quoting *Marvin v. Trout*, 199 U.S. 212, 225 (1905)).  In *Stevens*, the Supreme Court reviewed this "long tradition of *qui tam* actions in England and the American Colonies," as well as the "considerable number" of qui tam provisions passed by the First Congress, in holding the qui tam provisions to be consistent with Article III.  529 U.S. at 774-

777. For example, one early statute allowed "informer[s] to sue for, and receive half of [the] fine for, [a] failure to file [a] census return." *Id.* at 777 n.6 (citing Act of Mar. 1, 1790, ch. 2, § 3, 1 Stat. 101, 102). Another allowed "private individual[s] to sue for, and receive half of [the] fine for, carriage of seamen without contract or illegal harboring of runaway seamen." *Id.* (citing Act of July 20, 1790, ch. 29, §§ 1, 4, 1 Stat. 131, 131, 133). And a third allowed "private individual[s] to sue for, and receive half of [the] goods forfeited for, unlicensed trading with Indian tribes." *Id.* (citing Act of July 22, 1790, ch. 33, § 3, 1 Stat. 137, 137-138).

The Supreme Court found this history "well nigh conclusive" as to the qui tam provisions' consistency with Article III. *Stevens*, 529 U.S. at 777. For good reason: Legislation "'passed by the first Congress assembled under the Constitution, many of whose members had taken part in framing that instrument, … is contemporaneous and weighty evidence of its true meaning.'" *Marsh v. Chambers*, 463 U.S. 783, 790 (1983); *see Bowsher v. Synar*, 478 U.S. 714, 723-724 (1986) (giving weight to the First Congress's conclusion that the Legislative Branch should have no role in the removal of Executive officers); *Mistretta v. United States*, 488 U.S. 361, 401 (1989) (explaining that "'traditional ways of conducting government … give meaning' to the Constitution"

(quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610 (1952) (Frankfurter, J., concurring))). And as this Court explained in *Riley*, it is "logically inescapable that the same history that was conclusive on the Article III question in *Stevens* … is similarly conclusive with respect to the Article II question" raised here. 252 F.3d at 752; *see also Stevens*, 529 U.S. at 801 (Stevens, J., dissenting) (making the same point in agreeing with the majority on the Article III issue).

The early statutes are relevant not just for the fact that they existed but for the fact that suits under them were routinely brought and adjudicated, including by constitutional luminaries. As the legal history scholars' brief explains (at 12-14), qui tam suits under the Slave Trade Act of 1794 were particularly notable in that regard. Chief Justice Marshall wrote the Supreme Court's opinion in one such case, *Adams v. Woods*, 6 U.S. (2 Cranch) 336 (1805). Another was brought (Scholars' Br. 13-14) by the New York Manumission Society, which counted two of the three authors of the Federalist Papers—John Jay and Alexander Hamilton—among its founders, *see* Martha S. Jones, *Time, Space, and Jurisdiction in Atlantic World Slavery*, 29 L. & Hist. Rev. 1031, 1042-1043 (2011).

There is also evidence indicating the early Executive Branch's acceptance of qui tam provisions as an established feature of early American law. In 1795, for example, Attorney General Bradford submitted to Congress a draft bill proposing fees to be awarded by the federal courts; the bill included the sort of cost-shifting provision for qui tam suits that Congress had previously enacted in 1792. *See Fees of Courts, Communicated to the House of Representatives, January 12, 1795, in* 1 *American State Papers: Class X, Miscellaneous* 117, 121 (William S. Hein & Co. 1998) (provision for cost-shifting in suits brought by "any informer or plaintiff, on a penal statute, to whose benefit the penalty, or any part thereof, if recovered, is directed by law to accrue"), https://perma.cc/JGR5-8AQA. The inclusion of that provision in the Attorney General's proposal strongly suggests the early Executive Branch perceived no constitutional problem with qui tam suits.

And the Supreme Court, too, has accepted qui tam litigation as a routine feature of American law—not just at the Founding, as HCAT suggests (Br. 61-62), but much more recently as well. In *Marvin*, for example, the Court upheld (in 1905) the constitutionality of a state statute allowing a person to sue to recover an amount of money lost by another person in illegal gambling, if the person who had lost the money did not bring suit within six

months.  To hold that such a statute was unconstitutional, the Court explained, "would be in effect to hold invalid all legislation providing for proceedings in the nature of *qui tam* actions," even though such statutes had "been in existence for hundreds of years in England, and in this country ever since the foundation of our Government."  199 U.S. at 225.  And in *Hess*, the Supreme Court held (in 1943) that the court of appeals had been wrong to construe the False Claims Act narrowly "on the premise that qui tam or informer actions 'have always been regarded with disfavor.'"  317 U.S. at 540-541.  To the contrary, the Court observed that "[q]ui tam suits have been frequently permitted by legislative action" and that "Congress has power to choose this method to protect the government from burdens fraudulently imposed upon it."  *Id.* at 541-542.

HCAT suggests (Br. 61) that "there is no evidence that the founding generation considered whether *qui tam* suits violate Article II."  But one has to overlook an extraordinary volume of evidence to conclude that the Founding-era embrace of qui tam actions was "'thoughtless[]'" (*id.*).  Consider, for example, the debate over the availability of a presidential pardon for Samuel Dodge, a customs inspector who had been sued under a qui tam provision that "awarded half of any recovered fine to the United States, and

divided the other half between the private informer and local treasury officials." Scholars' Br. 15. President George Washington sought advice on the availability of a pardon from Secretary of the Treasury Alexander Hamilton, who in turn sought advice from the Auditor of the Treasury Department. *Id.* The Auditor informed Washington that he "could remit only the United States' portion of the fine," as well as "any applicable criminal punishments," but not "the portion of the penalty awarded to the private informer." *Id.* And Washington took that advice. *Id.* at 16. This episode—involving one of the authors of the Federalist Papers, as well as the first President—sharply illuminated the intersection between qui tam provisions and one of the President's core powers under Article II. Yet no one, apparently, came away from the episode thinking that the President's inability to pardon the private liability of qui tam defendants raised a constitutional concern. That could not possibly have been a "thoughtless" conclusion on the part of such figures as Washington and Hamilton.

*    *    *

For all these reasons, this Court was correct to uphold the constitutionality of the qui tam provisions in *Riley*, and the district court—relying on

- 29 -

*Riley*—was correct to reject HCAT's constitutional challenge. There is no reason for the en banc Court to reconsider *Riley*.

## II. The District Court Erred By Not Imposing The Statutorily Required Penalty

The district court erred, however, by concluding that the Excessive Fines Clause prevented it from imposing the minimum civil penalty that the False Claims Act requires for the number of claims that the jury found to have been false. Assuming the Eighth Amendment's Excessive Fines Clause applies in a qui tam action that the government has not taken over, the amount of civil penalties prescribed by the statute is consistent with the Excessive Fines Clause.[3]

1. A monetary penalty violates the Excessive Fines Clause only "if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). That is the same "standard of

---

[3] The Supreme Court has twice reserved the question whether the Excessive Fines Clause applies in qui tam suits in which the government has not intervened. *See Austin v. United States*, 509 U.S. 602, 607 n.3 (1993); *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 275 n.21 (1989). For present purposes, the government does not dispute the applicability of the Excessive Fines Clause. The Court can assume, without deciding, that it applies.

gross disproportionality articulated in" the Supreme Court's "Cruel and Unusual Punishments Clause precedents." *Id.* at 336. Under that highly deferential standard, a penalty need only "bear *some relationship* to the gravity of the offense that it is designed to punish." *Id.* at 334 (emphasis added).

In *Bajakajian*, the Supreme Court held that even that deferential standard did not permit the government to require the forfeiture of the full amount of cash (more than $300,000) carried by a person who had failed to disclose it to a customs inspector. The Court reasoned that the amount of the forfeiture had literally nothing to do with the gravity of the offense — the failure to report. 524 U.S. at 337-340.

But *Bajakajian* did not involve a statutorily specified penalty for a particular offense, and nothing in its reasoning suggests that, where Congress has specified what it regards as an appropriate penalty for a particular act, a court may hold that provision unconstitutional because it disagrees with Congress's judgment about what penalty is proportionate to the offense. To the contrary, *Bajakajian* — like other decisions of the Supreme Court — emphasizes "that judgments about the appropriate punishment for an offense belong in the first instance to the legislature." 524 U.S. at 336; *see, e.g., Rummel*

*v. Estelle*, 445 U.S. 263, 271-284 (1980); *Gore v. United States*, 357 U.S. 386, 393 (1958).

Applying *Bajakajian*, the federal courts of appeals have almost uniformly upheld the constitutionality of civil penalties within the statutorily authorized range in False Claims Act cases. *See Stop Ill. Health Care Fraud, LLC v. Sayeed*, 100 F.4th 899, 906-908 (7th Cir. 2024), *reh'g denied*, 2024 WL 2785312 (7th Cir. May 30, 2024); *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1314-1316 (11th Cir. 2021); *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387-390 (4th Cir. 2015); *United States v. Aleff*, 772 F.3d 508, 512-513 (8th Cir. 2014); *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 405-410 (4th Cir. 2013); *United States v. Bourseau*, 531 F.3d 1159, 1173-1174 (9th Cir. 2008); *United States v. Rogan*, 517 F.3d 449, 454 (7th Cir. 2008). Like the Supreme Court, the courts of appeals have emphasized that it is for Congress rather than the courts to determine what penalty is appropriate for a false claim. They have accordingly recognized "'a strong presumption of constitutionality where the value of a'" penalty "'falls within the … range prescribed by Congress.'" *Stop Ill. Health Care Fraud*, 100 F.4th at 907; *see Yates*, 21 F.4th at 1314 ("'[P]enalties falling below

the maximum statutory fines for a given offense … receive a strong presumption of constitutionality.'" (alteration omitted)).

This Court has not addressed an excessive-fines challenge in the context of the False Claims Act, but in assessing Eighth Amendment challenges to civil fines imposed by state and federal agencies, it has held that such a fine categorically "does not violate the Eighth Amendment—no matter how excessive the fine may appear—if it does not exceed the limits prescribed by the statute authorizing it." *Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 234 (5th Cir. 2016) (citing *Newell Recycling Co. v. EPA*, 231 F.3d 204, 210 (5th Cir. 2000)); *see Gonzalez v. NOAA*, 420 F. App'x 364, 370 (5th Cir. 2011) (applying this rule); *see also Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 374 (5th Cir. 2012) (concluding, without the need for extensive analysis, that a $10,000 fine "for filing a fraudulent lien" was "not 'grossly disproportional to the gravity of'" that "'offense'").

2.      As noted above, the False Claims Act and statutorily authorized regulations specify a penalty within a range from $5,500 to $11,000 for violations on or before November 2, 2015, and within a range from $13,946 to $27,894 for violations after that date, if assessed at the time of judgment here. *See* 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.3(a)(9); *id.* § 85.5, tbl. 1.  There is no

proper basis to conclude that the statutorily required minimum penalties — $5,500 or $13,946, depending on the date of the claim, for purposes of this case — violate the Constitution.

Unlike the forfeiture in *Bajakajian*, which bore no relationship to the gravity of the offense at issue, the penalty that Congress has specified here plainly "bear[s] some relationship to the gravity of the offense that it is designed to punish," 524 U.S. at 334 — that is, the offense of knowingly submitting, or causing the submission of, a false claim seeking payment from the federal government. A penalty that Congress determines to be appropriate for a given offense will virtually always, if not always, "bear" at least "some relationship to the gravity of the offense that it is designed to punish," *id*. And that is clearly true of Congress's determination that knowingly submitting or causing the submission of a false claim warrants a penalty within the range prescribed here. Indeed, as noted above, this Court has held that statutorily specified civil fines do not violate the Eighth Amendment, "[n]o matter how excessive" they "may appear," if they do "not exceed the limits prescribed by the statute authorizing" them. *Newell Recycling*, 231 F.3d at 210.

Nor does it violate the Eighth Amendment to multiply the per-claim statutory penalty by the large number of claims that the jury found to have

been false in this case. If the Eighth Amendment allows the penalty that Congress has chosen for the act of knowingly attempting to defraud the United States—as it clearly does, for the reasons discussed above—then it also allows the repeated imposition of that same penalty when the defendant repeatedly engages in the violative conduct. As the Seventh Circuit has explained in addressing a related constitutional challenge, even a "huge number" produced by multiplying a per-violation penalty by the defendant's number of violations cannot be "evaluate[d] … separately from the penalty per violation." *United States v. Dish Network LLC*, 954 F.3d 970, 979 (7th Cir. 2020). The statutory penalty is large, but "[s]omeone whose … penalty reaches the mesosphere only because the number of violations reaches the stratosphere can't complain about the consequences of its own extensive misconduct." *Id.* at 980.

3. The district court based its contrary ruling on a four-factor standard that this Court has applied in analyzing whether a *forfeiture* violates the Excessive Fines Clause. Under this standard, the Court considers "'(a) the essence of the defendant's crime and its relationship to other criminal activity; (b) whether the defendant was within the class of people for whom the statute of conviction was principally designed; (c) the maximum sentence,

- 35 -

including the fine that could have been imposed; and (d) the nature of the harm resulting from the defendant's conduct.'" *United States v. Suarez*, 966 F.3d 376, 385 (5th Cir. 2020) (quoting *United States v. Mora*, 644 F. App'x 316, 317 (5th Cir. 2016)); *see also United States v. Dennis*, 41 F.4th 732, 746 (5th Cir. 2022) (applying this standard); *United States v. Rellan Perez*, 2025 WL 1157550, at *1 (5th Cir. Apr. 21, 2025) (unpublished) (same).[4] The standard derives from *Bajakajian*, where the Supreme Court held that the forfeiture of the hundreds of thousands of dollars carried by a person who had failed to report the money to customs officials would be grossly disproportionate to the gravity of the "reporting offense" — an offense that "'was unrelated to any other illegal activities,'" that caused the government only "'minor'" harm,

---

[4] The Court has also applied *Bajakajian*, though not precisely this formulation of the four-factor standard, in a host of other forfeiture cases. *See United States v. Reed*, 908 F.3d 102, 126 (5th Cir. 2018); *United States v. Wallace*, 389 F.3d 483, 485-488 (5th Cir. 2004); *United States v. Loe*, 248 F.3d 449, 464 (5th Cir. 2001); *United States v. Wyly*, 193 F.3d 289, 303 (5th Cir. 1999); *United States v. Haro*, 753 F. App'x 250, 259-260 (5th Cir. 2018); *United States v. 2004 Ferrari 360 Modeno*, 544 F. App'x 545, 546 (5th Cir. 2013); *United States v. $78,882.00 in U.S. Currency*, 464 F. App'x 382, 384 (5th Cir. 2012); *United States v. 1709 Mitchell Jones*, 173 F. App'x 345, 346 (5th Cir. 2006).

that Congress created in order to target "'money launderer[s], … drug traf-

ficker[s], or … tax evader[s],'" and that carried a "maximum statutory fine"

considerably less than the amount of the forfeiture. *Suarez*, 966 F.3d at 385.

Forfeiture cases, however, present a fundamentally different question

under the Excessive Fines Clause than cases involving statutorily specified

penalties. In a forfeiture case, Congress has not specified a fixed amount of

the property to be taken from the defendant as a penalty for his offense; ra-

ther, the amount of the forfeiture is determined by the amount of property

involved in or traceable to the criminal offense.[5] *See, e.g.*, 18 U.S.C. § 982.

Thus, the question in *Bajakajian*—and in the cases to which the Court has

applied the four-factor standard derived from *Bajakajian*—is whether the for-

feiture of the property in question is grossly disproportionate to the gravity

of the offense. *See, e.g.*, *Suarez*, 966 F.3d at 381 (forfeiture of "funds involved

in the counts for which [the defendant] was convicted"); *Dennis*, 41 F.4th at

739 (forfeiture of weapons, a boat, real estate, and cash); *Mora*, 644 F. App'x

---

[5] This Court has held that the forfeiture of the proceeds of a criminal offense, as opposed to property involved in the offense, does not constitute a punishment subject to the Excessive Fines Clause. *See, e.g.*, *United States v. Betancourt*, 422 F.3d 240, 250 (5th Cir. 2005); *United States v. Davis*, 2026 WL 511147, at *4 (5th Cir. Feb. 24, 2026) (unpublished).

at 317 (forfeiture of cash that "was the instrumentality of [the] crime"); *Rellan Perez*, 2025 WL 1157550, at \*1 (forfeiture of cash, a truck, and a trailer).

The standard has no proper application to a case, like this one, where Congress *has* specified the amount of the monetary penalty (or at least the range) that it regards as appropriate for a given violation. That is clear from this Court's case law, which has not applied the four-factor standard in sustaining statutorily specified fines. *See Cripps*, 819 F.3d at 234; *Vanderbilt*, 692 F.3d at 374; *Newell Recycling*, 231 F.3d at 210; *Gonzalez*, 420 F. App'x at 370.

It is also clear from *Bajakajian* itself, which reiterates the longstanding principle "that judgments about the appropriate punishment for an offense belong in the first instance to the legislature," and which explains that the gross-disproportionality standard for determining whether monetary penalties are excessive is the same standard more generally "articulated in [the Court's] Cruel and Unusual Punishments Clause precedents." 524 U.S. at 336-337. Under that standard, courts almost never accept proportionality challenges to non-capital criminal punishments. *See, e.g.*, *Rummel*, 445 U.S. at 265-267, 285 (life imprisonment was not grossly disproportionate for recidivist thief who had stolen, cumulatively, less than $230); *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (per curiam) ("*Rummel* stands for the proposition

that federal courts should be 'reluctan[t] to review legislatively mandated terms of imprisonment' and that 'successful challenges to the proportionality of particular sentences' should be 'exceedingly rare[.]'" (citation omitted)); *United States v. Harris*, 566 F.3d 422, 436 (5th Cir. 2009) (similar). There is no sounder basis for a court to second-guess the appropriateness of a civil penalty that Congress has specified for a particular offense.[6]

The district court's analysis here exemplifies the inappropriateness of applying the multifactor analysis in this context. As the court recognized, the second and third factors make no sense in this context: A defendant that has been found liable for false claims to the government is clearly "within the class of people for whom the [False Claims Act] was principally designed," and a civil penalty specified by the statute is obviously "below the

---

[6] We have identified just one case in which this Court—in an unpublished opinion—applied a multifactor analysis to the constitutionality of a criminal fine (as opposed to forfeiture) within a congressionally specified range. And in that case, the Court upheld the fine with little analysis, so it did not need to address whether the multifactor standard could be a basis for invalidating a congressionally specified penalty. *See United States v. Dalcourt*, 722 F. App'x 385, 385 (5th Cir. 2018). To the extent *Dalcourt* could be read to suggest that a congressionally specified penalty, moreover, it would be inconsistent with this Court's published decisions in *Cripps* and *Newell Recycling*.

maximum that could have been imposed under the statute." ROA.6053. Although the latter factor is relevant to forfeiture cases — where the court is comparing the amount of the forfeiture to the statutorily specified penalty for the offense — it is not relevant to judging the constitutionality of the statutory penalty itself. And the first and fourth factors led the court equally astray. In applying those factors, the court concluded that the constitutionally permissible penalty for HCAT's violations of the False Claims Act is less than one-thirtieth of what Congress specified, simply because the court regarded HCAT's misconduct as less culpable and harmful than some other conduct for which the same congressionally specified penalty range would apply. ROA.6052-6054. That makes little sense. A district court's appraisal of the defendant's relative culpability is a sound basis for the court to select a penalty amount *within* the congressionally specified range. In this case, the court could reasonably have determined based on its analysis of HCAT's culpability that a bottom-of-the-range penalty was appropriate. But it cannot be a basis to hold that the Eighth Amendment bars the imposition of even that minimum statutorily required penalty.

In short, there was no sound basis for the district court to refrain from imposing the minimum penalty specified by Congress for the number of claims the jury found to have been false.

4. Moreover, even if the district court could permissibly have determined that the statutory minimum penalty violated the gross-disproportionality standard, there was plainly no basis for the court to hold that the Excessive Fines Clause caps the penalty amount at less than one-thirtieth of what Congress specified. The district court reached that conclusion by applying the sort of ratio-based analysis that the Supreme Court has articulated for determining whether jury punitive-damages awards are consistent with the Due Process Clause. But as this Court has held, and as the district court recognized, the due-process standard does not apply to the review of statutorily prescribed penalties under the Excessive Fines Clause. ROA.6054 n.2 (citing *Vanderbilt*, 692 F.3d at 373-374). And it is particularly inapposite to penalties for fraud, where the harm to the government transcends economic losses. There was no basis for the district court—even as it recognized the inapplicability of the Due Process analysis—to import the substance of that analysis into the Excessive Fines Clause by holding that "a civil penalty to

- 41 -

actual damages ratio of 3 to 1" was the "the maximum allowable" in this case, ROA.6055.

a.	The ratio-based analysis that the district court applied stems from the Supreme Court's decisions in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

In *Gore*, the Supreme Court held that the Due Process Clause did not permit a $2 million punitive-damages award against BMW for having failed to advise dealers or customers of certain predelivery repairs to new cars. The Court's reasoning rested on the premise that BMW had not received "fair notice … of the severity of the penalty that" it could face for its conduct. 517 U.S. at 574. The Court considered the ratio between the punitive-damages award and the actual "harm or potential harm" caused by BMW's conduct, but only as one of "[t]hree guideposts … indicat[ing]," in its view, that BMW had not "receive[d] adequate notice." *Id.* at 574-575.

The Supreme Court's reasoning in *State Farm* was similar. In invalidating a $145 million punitive-damages award, in a case with $1 million in actual damages, the Court again emphasized the need for "'fair notice.'" 538

U.S. at 417.  It expressed concern about "the imprecise manner in which punitive damages systems are administered," leaving juries "'with wide discretion in choosing amounts'" and "'pos[ing] an acute danger of arbitrar[iness].'"  *Id.*  As in *Gore*, the Court looked to the ratio between the punitive and actual damages as a "guidepost," *id.* at 418—but as in *Gore*, the Court's analysis of the ratio was tied to the fair-notice and arbitrariness concerns arising from the ad hoc determination of punitive damages by juries, *see id.* at 424-428.

b.      For several reasons, the analysis set forth in *Gore* and *State Farm* cannot properly be understood to mean that it is unconstitutional for Congress to specify a monetary penalty for a given offense that exceeds, by more than "a single-digit ratio," *State Farm*, 538 U.S. at 425—much less the "3 to 1" ratio that the district court deemed acceptable here, ROA.6055—the actual harm caused by the offense.  This Court recognized as much in *Vanderbilt*, when it held that the principles articulated in *Gore* and *State Farm* are "inapplicable" where Congress has specified a particular penalty.  *Vanderbilt*, 692 F.3d at 374.

*First*, the Supreme Court has explained that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth

Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  The Due Process Clause can properly apply to punitive damages because the "Excessive Fines Clause does not apply to awards of punitive damages in cases between private parties," *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 260 (1989).  But it cannot properly apply to civil penalties more specifically governed by the Excessive Fines Clause.

*Second*, as the Court recognized in *Vanderbilt*, the arbitrariness and fair-notice concerns that animated *Gore* and *State Farm* "are inapplicable" where Congress has specified the penalty for violating a given prohibition.  692 F.3d at 374.  In that situation, potential violators have fair notice of the sanction they may face for their conduct, and it is neither arbitrary nor unfair for a court to impose it.  Nor is there some other basis to believe that the Due Process Clause might bar the imposition of a statutorily specified penalty.  The Due Process Clause protects those rights that are "'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'"  *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022).  There

- 44 -

is no basis to believe that "history and tradition" or "the concept of ordered liberty" require capping civil penalties at a single-digit multiplier of the actual harm caused by a violation.

*Finally*, even if a ratio-based analysis could ever play a proper role in the review of statutorily prescribed penalties, *contra Vanderbilt*, 692 F.3d at 374, it is particularly inapposite for fraud offenses. That is because "[f]raud harms the United States in ways untethered to the value of any ultimate payment," such as by diminishing "'the public's confidence in the government'" and by requiring the government to devote resources to detecting and pursuing fraudsters. *Yates*, 21 F.4th at 1316. For that reason, "the concept of harm" to the government—the denominator in the ratio, where penalties are the numerator—"need not be confined strictly to the economic realm" where the harm arises from fraud. *Bunk*, 741 F.3d at 409. Indeed, economic harm is not even an element of a False Claims Act violation: The Act can be violated by the submission of false or fraudulent claims, and civil penalties for that conduct can be imposed, even when the government has suffered no economic loss at all. *See, e.g., id.* at 404 ("[T]he [Act] 'provides for penalties even if (indeed, *especially* if) actual loss is hard to quantify.'"); *United States v. Hughes*, 585 F.2d 284, 286 n.1 (7th Cir. 1978) ("A false claim is actionable

under the Act even though the United States has suffered no measurable damages[.]").

c. As noted above, the district court here recognized that this Court had "rejected the notion that the Due Process clause limits statutory penalties." ROA.6054 n.2 (citing *Vanderbilt*, 692 F.3d at 373-374). But it nonetheless reasoned "that a comparison between the actual damages and the civil penalty can be useful when assessing the Eighth Amendment question," ROA.6054 n.2, and determined that "a civil penalty to actual damages ratio of 3 to 1 [was] the maximum allowable under the Excessive Fines clause here," ROA.6055. Those conclusions were incorrect. There is no basis to import into the Excessive Fines Clause the sort of ratio-based analysis developed in the context of the Due Process Clause.

The only appellate decision to have held a statutorily prescribed False Claims Act penalty to be unconstitutional—the Eighth Circuit's decision in *United States ex rel. Grant v. Zorn*, 107 F.4th 782 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 2812 (2025), *and* 145 S. Ct. 2816 (2025)—made the same error. In that case, where the United States did not participate as an intervenor or amicus curiae until the rehearing stage, neither party disputed "that cases analyzing punitive damages under the Due Process Clause are instructive in analyzing

punitive sanctions under the Excessive Fines Clause," *id.* at 798, and the inadequacy of the parties' briefing led the court to an incorrect result.[7] The district court's decision in *United States ex rel. Fesenmaier v. Cameron-Ehlen Group, Inc.*, 715 F. Supp. 3d 1133, 1157-1165 (D. Minn. 2024), *appeal dismissed*, 2024 WL 4026210 (8th Cir. July 31, 2024), on which the district court here relied, ROA.6054-6055, was erroneous in the same way.[8]

The Eighth Circuit's decision in *Grant* relied heavily on the fact that, in a handful of cases, courts have identified a low ratio between civil penalties and actual damages as one reason for upholding the constitutionality of a penalty award under the False Claims Act. But none of those decisions suggested that a low ratio was *necessary* to uphold a penalty within the statutory range. In *Aleff*, the Eighth Circuit discussed the ratio between the penalty and the actual damages only in a sentence concluding with the point that the

---

[7] For that reason among others, the government declined to seek certiorari. *See* Letter from Sarah M. Harris, Acting Solic. Gen., to the Hon. Mike Johnson, Speaker, U.S. House of Reps. (Feb. 24, 2025), https://perma.cc/BU34-UGUC.

[8] The government likewise declined to appeal that ruling, because it determined that the defendants would "'be unable to satisfy even the compensatory damages' award" in that case, "'much less any penalt[y],'" and thus "entered into a settlement … on the basis of the defendants' ability to pay." Letter from Elizabeth B. Prelogar, Solic. Gen., to the Hon. Mike Johnson, Speaker, U.S. House of Reps. (July 24, 2024).

penalty was "within the [False Claims Act]'s statutory limits," and immediately after that sentence, the Court cited one of its precedents for the proposition that "a penalty less than [the] statutory maximum was not excessive." 772 F.3d at 513. In *Rogan*, the Seventh Circuit pointed to the single-digit magnitude of the ratio in explaining that a penalty would pass muster even if it were evaluated under the Due Process Clause—but it went on to explain that "[i]f there is to be a difference" between the due-process and excessive-fines standards, "one would think that a fine expressly authorized by statute could be higher than a penalty selected *ad hoc* by a jury." 517 F.3d at 454. And in *Drakeford*, where the Fourth Circuit likewise noted the single-digit magnitude of the ratio between the penalty and the economic harm of a fraud offense, it likewise cited that ratio as just one among several factors in upholding the penalty's constitutionality. 792 F.3d at 389-390.

In other cases, moreover, courts of appeals (including the courts that decided *Rogan* and *Drakeford*) have upheld civil penalties within the statutory range that would be invalid under the ratio-based reasoning applied by the Eighth Circuit in *Grant* and by the district court in this case. In *Stop Illinois Health Care Fraud*, for example, the Seventh Circuit affirmed a False

Claims Act judgment over an Excessive Fines Clause challenge without commenting on the ratio between the statutorily prescribed civil penalties and the actual damages, *see* 100 F.4th at 906-908, even though the defendants had argued that the penalty for one of the defendants was "more than forty times the actual damages" caused by that defendant, Defs.' Reply Br., *Stop Ill. Health Care Fraud*, 100 F.4th 899 (Nos. 22-3295, 23-1943), 2023 WL 6729509, at *23 (emphasis omitted).  In *Bunk*, the Fourth Circuit upheld the constitutionality of a $24 million civil penalty under the False Claims Act where the district court had found "insufficient evidence of any" economic harm to the government (in other words, where the ratio between the penalty and the proven damages was infinite).  741 F.3d at 409.  And in *Yates*, the Eleventh Circuit rejected an Excessive Fines Clause challenge to a False Claims Act "judgment of $1.179 million based on $755.54 in actual damages."  21 F.4th at 1314.  The court recognized that the ratio of more than 1500 to one between the penalty amount and the actual damages might "raise an eyebrow," but it explained that any "optic[al]" concern was "negated" by the fact that the penalty amount was "the result of [the defendant's] repeated (214) instances of fraud against the United States."  *Id.*

It was therefore incorrect for the district court to conclude that "a civil penalty to actual damages ratio of 3 to 1 is the maximum allowable under the Excessive Fines clause here." ROA.6055. That conclusion cannot be squared with this Court's recognition that the ratio-based analysis adopted in due-process cases has no proper bearing on the constitutionality of a legislatively specified penalty.

## CONCLUSION

This Court should affirm the district court's ruling as to the constitutionality of the False Claims Act's qui tam provisions and reverse its ruling as to the Excessive Fines Clause. Assuming the Court rejects HCAT's other

challenges to the judgment, it should remand for the imposition of the stat-

utorily required civil penalty.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

RYAN RAYBOULD
  *United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH

 */s/ Daniel Winik*
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*
  *daniel.l.winik@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,815 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Book Antiqua, a proportionally spaced typeface.

*/s/ Daniel Winik*
Daniel Winik

# ADDENDUM

# TABLE OF CONTENTS

31 U.S.C. § 3729......................................................................... A1

31 U.S.C. § 3730......................................................................... A1

31 U.S.C. § 3731......................................................................... A7

**31 U.S.C. § 3729**

**§ 3729. False claims**

(a) Liability for certain acts.—

(1) In general. —Subject to paragraph (2), any person who--

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), plus 3 times the amount of damages which the Government sustains because of the act of that person.

…


**31 U.S.C. § 3730**

**§ 3730. Civil actions for false claims**

(a) Responsibilities of the Attorney General. — The Attorney General diligently shall investigate a violation under section 3729. If the Attorney General finds that a person has violated or is violating section 3729, the Attorney General may bring a civil action under this section against the person.

(b) Actions by private persons. —

(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government … . The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until

the court so orders.  The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2).  Any such motions may be supported by affidavits or other submissions in camera.  The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

(4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall —

(A) proceed with the action, in which case the action shall be conducted by the Government; or

(B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

(5) When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

(c) Rights of the parties to qui tam actions. —

(1) If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action.  Such person shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2).

(2) (A) The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

(B) The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate,

and reasonable under all the circumstances.  Upon a showing of good cause, such hearing may be held in camera.

(C) Upon a showing by the Government that unrestricted participation during the course of the litigation by the person initiating the action would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment, the court may, in its discretion, impose limitations on the person's participation, such as—

(i) limiting the number of witnesses the person may call;

(ii) limiting the length of the testimony of such witnesses;

(iii) limiting the person's cross-examination of witnesses; or

(iv) otherwise limiting the participation by the person in the litigation.

(D) Upon a showing by the defendant that unrestricted participation during the course of the litigation by the person initiating the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense, the court may limit the participation by the person in the litigation.

(3) If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action.  If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense).  When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

(4) Whether or not the Government proceeds with the action, upon a showing by the Government that certain actions of discovery by the person initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery for a period of not more than 60 days.  Such a showing shall be conducted in camera.  The court may extend the 60-day period upon a further showing in camera that the Government has pursued the criminal or civil investigation or proceedings with reasonable diligence

and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation or proceedings.

(5) Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section. Any finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties to an action under this section. For purposes of the preceding sentence, a finding or conclusion is final if it has been finally determined on appeal to the appropriate court of the United States, if all time for filing such an appeal with respect to the finding or conclusion has expired, or if the finding or conclusion is not subject to judicial review.

(d) Award to qui tam plaintiff. —

(1) If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

(2) If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

(3) Whether or not the Government proceeds with the action, if the court finds that the action was brought by a person who planned and initiated the violation of section 3729 upon which the action was brought, then the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the person would otherwise receive under paragraph (1) or (2) of this subsection, taking into account the role of that person in advancing the case to litigation and any relevant circumstances pertaining to the violation. If the person bringing the action is convicted of criminal conduct arising from his or her role in the violation of section 3729, that person shall be dismissed from the civil action and shall not receive any share of the proceeds of the action. Such dismissal shall not prejudice the right of the United States to continue the action, represented by the Department of Justice.

(4) If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

(e) Certain Actions Barred. —

(1) No court shall have jurisdiction over an action brought by a former or present member of the armed forces under subsection (b) of this section against a member of the armed forces arising out of such person's service in the armed forces.

(2) (A) No court shall have jurisdiction over an action brought under subsection (b) against a Member of Congress, a member of the judiciary, or

a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought.

(B) For purposes of this paragraph, "senior executive branch official" means any officer or employee listed in paragraphs (1) through (8) of section 13103(f) of title 5.

(3) In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

(4) (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed —

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2)3 who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

(f) Government not liable for certain expenses. — The Government is not liable for expenses which a person incurs in bringing an action under this section.

…

**31 U.S.C. § 3731**

**§ 3731. False claims procedure**

…

(c) If the Government elects to intervene and proceed with an action brought under [section] 3730(b), the Government may file its own complaint or amend the complaint of a person who has brought an action under section 3730(b) to clarify or add detail to the claims in which the Government is intervening and to add any additional claims with respect to which the Government contends it is entitled to relief.  For statute of limitations purposes, any such Government pleading shall relate back to the filing date of the complaint of the person who originally brought the action, to the extent that the claim of the Government arises out of the conduct, transactions, or occurrences set forth, or attempted to be set forth, in the prior complaint of that person.

…