# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA ex rel. CHERYL TAYLOR,

Plaintiff-Appellee/Cross-Appellant, and

UNITED STATES OF AMERICA,

Intervenor-Appellee/Cross-Appellant,

v.

HEALTHCARE ASSOCIATES OF TEXAS L.L.C.,

Defendant-Appellant/Cross-Appellee.

On Appeal from the United States District Court
for the Northern District of Texas

## REPLY BRIEF FOR INTERVENOR-APPELLEE/CROSS-APPELLANT UNITED STATES OF AMERICA

BRETT A. SHUMATE
  *Assistant Attorney General*

RYAN RAYBOULD
  *United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES......................................................................... ii

INTRODUCTION AND SUMMARY ................................................ 1

ARGUMENT........................................................................................ 4

    A.    The Multifactor Standard For Forfeitures Is Inapposite..............4

    B.    Under The Correct Standard, The Penalties Specified By The False Claims Act Are Plainly Constitutional.......................13

        1.    Congress has authority to impose a distinct penalty for each of HCAT's many violations...................................14

        2.    HCAT's relative culpability is irrelevant to its constitutional argument.......................................................17

        3.    The ratio between the penalty and the government's losses is irrelevant ...............................................................18

CONCLUSION ........................................................................... 25

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                          **Page(s)**

*Alexander v. United States,*
   509 U.S. 544 (1993) ................................................................10, 11

*BMW of North America, Inc. v. Gore,*
   517 U.S. 559 (1996) ......................................................................18

*Cripps v. Louisiana Department of Agriculture & Forestry,*
   819 F.3d 221 (5th Cir. 2016) ....................................................1, 6, 11

*Ewing v. California,*
   538 U.S. 11 (2003) ....................................................................9, 10

*Gonzalez v. NOAA,*
   420 F. App'x 364 (5th Cir. 2011) ..............................................6, 11

*Gore v. United States,*
   357 U.S. 386 (1958) ........................................................................6

*Harmelin v. Michigan,*
   501 U.S. 957 (1991) ........................................................................9

*Hawks v. Greene,*
   2001 WL 1613889 (Tenn. Ct. App. Dec. 18, 2001) ...........................7

*Hutto v. Davis,*
   454 U.S. 370 (1982) ........................................................................9

*Morse Diesel International, Inc. v. United States,*
   79 Fed. Cl. 116 (2007) ..................................................................20

*Newell Recycling Co. v. EPA,*
   231 F.3d 204 (5th Cir. 2000) ....................................................1, 6, 11

*Rummel v. Estelle,*
   445 U.S. 263 (1980) ....................................................................6, 10

*Solem v. Helm,*
463 U.S. 277 (1983) ................................................................ 8-9, 9, 10

*State Farm Mutual Automobile Insurance Co. v. Campbell,*
538 U.S. 408 (2003) ...................................................................... 18-19

*Stop Illinois Health Care Fraud, LLC v. Sayeed,*
100 F.4th 899 (7th Cir. 2024) ............................................................21

*United States v. Aleff,*
772 F.3d 508 (8th Cir. 2014) .............................................................20

*United States v. Bajakajian,*
524 U.S. 321 (1998) ...................................................2, 5, 7, 10, 14, 19

*United States v. Beras,*
183 F.3d 22 (1st Cir. 1999) ..................................................................7

*United States v. Dish Network LLC,*
954 F.3d 970 (7th Cir. 2020) .............................................................15

*United States v. Lanier,*
520 U.S. 259 (1997) ...........................................................................19

*United States v. Rogan,*
517 F.3d 449 (7th Cir. 2008) .............................................................20

*United States v. Suarez,*
966 F.3d 376 (5th Cir. 2020) ...........................................4, 6, 11, 19

*United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.,*
741 F.3d 390 (4th Cir. 2013) .............................................................21

*United States ex rel. Drakeford v. Tuomey,*
792 F.3d 364 (4th Cir. 2015) .............................................................20

*United States ex rel. Fesenmaier v. Cameron-Ehlen Group, Inc.,*
715 F. Supp. 3d 1133 (D. Minn. 2024) ............................................23

*United States ex rel. Grant v. Zorn*,
 107 F.4th 782 (8th Cir. 2024) ................................................ 3, 13, 21, 22, 22-23
 2024 WL 4456550 (8th Cir. Oct. 9, 2024) ...............................................................23

*United States ex rel. Stearns v. Lane*,
 2010 WL 3702538 (D. Vt. Sept. 15, 2010) ...............................................23, 24

*Vanderbilt Mortgage & Finance, Inc. v. Flores*,
 692 F.3d 358 (5th Cir. 2012) ...........................................................................6, 19

*Yates v. Pinellas Hematology & Oncology, P.A.*,
 21 F.4th 1288 (11th Cir. 2021) ...........................................................................21

**Statutes:**

28 U.S.C. § 2403(a) ................................................................................................22

31 U.S.C. § 3729(a)(1) ...................................................................................... 13-14

**Regulations:**

28 C.F.R. § 85.3(a)(9) .............................................................................................14

28 C.F.R. § 85.5, tbl. 1 ...........................................................................................14

**Other Authorities:**

Letter from Elizabeth B. Prelogar, Solicitor General, to the
 Hon. Mike Johnson, Speaker, U.S. House of Representatives
 (July 24, 2024) .................................................................................................23

Letter from Sarah M. Harris, Acting Solicitor General, to the
 Hon. Mike Johnson, Speaker, U.S. House of Representatives
 (Feb. 24, 2025), https://perma.cc/BU34-UGUC .........................................22

## INTRODUCTION AND SUMMARY

HCAT provides no compelling justification for the district court's decision to hold part of a federal statute—the mandatory-civil-penalty provision of the False Claims Act—unconstitutional as applied in this case. Its response brief misunderstands our arguments and the law.

HCAT's central argument—that the provision in question "'cannot override the constitutional requirement of proportionality review'" (Resp. Br. 3)—attacks a straw man. A statute specifying a civil penalty of course cannot override the requirement that the penalty comport with the Eighth Amendment. The central dispute here is over what *standard* the Court should apply in determining whether the statutorily specified penalty is unconstitutionally excessive: the multifactor balancing test that the Court has applied to forfeitures, or the much more lenient review it has applied to penalties the *amount* of which has been legislatively prescribed.

That question should not be difficult to answer. This Court made clear in *Cripps v. Louisiana Department of Agriculture & Forestry*, 819 F.3d 221 (5th Cir. 2016), and *Newell Recycling Co. v. EPA*, 231 F.3d 204 (5th Cir. 2000), that a penalty Congress has identified as appropriate for a given offense will virtually always satisfy the constitutional requirement that it not be "grossly

disproportional to the gravity of" the offense, *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Yet HCAT never once cites *Cripps* and barely tries to distinguish *Newell*. And its amicus—apparently recognizing that both decisions are fatal to HCAT's argument—suggests that the Court should simply ignore these binding precedents on the baseless theory that they were wrongly decided.

Under the correct standard, there should be no question that the penalties specified by the False Claims Act fall within the range of permissible policy choices that the Eighth Amendment affords to Congress. The penalty amounts plainly "bear some relationship to the gravity of the offense that [they are] designed to punish," *Bajakajian*, 524 U.S. at 334— that is, the offense of knowingly submitting or causing the submission of a false claim seeking payment from the federal government.

HCAT's contrary arguments only underscore its misunderstanding of the constitutional standard. HCAT argues that the statutorily specified penalty somehow becomes unconstitutional when multiplied by the 21,844 violations that the jury found. But Congress is entitled to specify a distinct and additional monetary penalty for each violation of a federal law, even if (as HCAT suggests here) those violations all stemmed from one initial corporate

decision to break the law. HCAT's contention that its False Claims Act violations were less culpable than some others can hardly justify the district court's decision not even to impose the *minimum* statutorily required penalty. Finally, HCAT seems to concede (as it must) that the due-process standard, under which the Supreme Court articulated the ratio-based analysis that the district court applied, is inapplicable here. HCAT tries to shoehorn the same analysis into the multifactor standard for forfeitures, but it has no place there. Numerous courts have upheld False Claims Act penalties that would have been unconstitutional under the district court's analysis. And the only court of appeals that has embraced the district court's view did so in a case — *United States ex rel. Grant v. Zorn*, 107 F.4th 782 (8th Cir. 2024) — where the United States was never notified of its right to intervene and where the number of judges who publicly cast doubt on the analysis (four) was double the number who joined it (two).

This Court should reverse the district court's ruling that the False Claims Act's civil-penalty provisions are unconstitutional as applied here.

**ARGUMENT**

**A.      The Multifactor Standard For Forfeitures Is Inapposite**

1.      As our opening brief explains (at 35-36), the district court based its ruling on a four-factor standard — derived from *Bajakajian* — that this Court has applied in analyzing whether a forfeiture violates the Excessive Fines Clause.  *See, e.g.*, *United States v. Suarez*, 966 F.3d 376, 385 (5th Cir. 2020).  In a forfeiture case, Congress has not specified a fixed *amount* of property (or fixed range of amounts) to be taken from the defendant as a penalty for his offense, so the judicial endeavor in applying the Excessive Fines Clause is to ensure that the defendant is not excessively penalized because the amount of property involved in the criminal offense happens to have been large relative to the gravity of the offense.

Thus, in *Bajakajian*, the Supreme Court held that the forfeiture of the hundreds of thousands of dollars carried by a person who had failed to report the money to customs officials would be grossly disproportionate to the gravity of the "reporting offense."  *Suarez*, 966 F.3d at 385.  That analysis flowed from the fact that there was no connection between the gravity of the reporting offense and the amount of money that the defendant happened to have been carrying when he failed to report it.

But cases like this one, where Congress has specified the *amount* of the appropriate monetary penalty (or a range of appropriate amounts), are fundamentally different. Cases like this require much less searching judicial review to determine that the penalty specified by Congress is not "grossly disproportional to the gravity of [the] defendant's offense"—in other words, that it bears "*some relationship* to the gravity of the offense," *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (emphasis added). *Bajakajian* makes that clear by emphasizing "that judgments about the appropriate punishment for an offense belong in the first instance to the legislature" and that the gross-disproportionality standard for determining whether monetary penalties are excessive is the same standard more generally "articulated in [the Court's] Cruel and Unusual Punishments Clause precedents." *Id.* at 336. An argument that a congressionally specified monetary penalty is "grossly disproportional to the gravity of" an offense, *id.* at 334, is thus no different in kind from an argument that a congressionally specified penalty of incarceration is unconstitutionally excessive under the Cruel and Unusual Punishments Clause. Courts virtually never accept such arguments—not because they treat statutes as overriding the Constitution, but because the constitutional standard is so deferential to Congress that it will be violated only in extreme

instances.  *See, e.g.*, *Rummel v. Estelle*, 445 U.S. 263, 271-284 (1980); *Gore v. United States*, 357 U.S. 386, 393 (1958).

This Court has thus repeatedly held that civil fines imposed by state and federal agencies "do[] not violate the Eighth Amendment—no matter how excessive the fine may appear—if [the fine] does not exceed the limits prescribed by the statute authorizing it."  *Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 234 (5th Cir. 2016) (citing *Newell Recycling Co. v. EPA*, 231 F.3d 204, 210 (5th Cir. 2000)); *see Gonzalez v. NOAA*, 420 F. App'x 364, 370 (5th Cir. 2011) (applying this rule); *see also Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 374 (5th Cir. 2012) (concluding, without the need for extensive analysis, that a $10,000 fine "for filing a fraudulent lien" was "not 'grossly disproportional to the gravity of'" that "'offense'").  In determining the constitutionality of legislatively specified penalties, the Court has correctly *not* applied the sort of multifactor balancing test it applies to forfeitures, *see Suarez*, 966 F.3d at 385.

2.    HCAT's brief whistles past all of this.  That is most evident from HCAT's talismanic incantation—six times, plus twice more in quoting other courts—of a single footnote in *Bajakajian* making the point that a sentencing guideline "cannot override the constitutional requirement of proportionality

review," 524 U.S. at 339 n.14. HCAT accuses the government of having "overlooked" this footnote (Resp. Br. 54) as if it is the key to the case.

It is nothing of the sort. The footnote comes in the context of the Supreme Court majority's point that the forfeiture of the hundreds of thousands of dollars the defendant had been carrying was grossly disproportionate to the maximum criminal fine that the Sentencing Guidelines authorized for the reporting offense—namely, $5,000. *Bajakajian*, 524 U.S. at 338-339. In the footnote, the majority responded to the dissent—which had noted that the Guidelines provided not just for the fine but for "'[f]orfeiture … as provided by statute,'" *id.* at 351 (Kennedy, J., dissenting)—by explaining, after analyzing the Guidelines, that in any event a guideline could not "override the constitutional requirement of proportionality review." *Id.* at 339 n.14 (majority opinion). In other words, everything about the footnote—like the rest of the analysis in *Bajakajian*—was tied to the forfeiture context, where a directive to forfeit the whole quantity of property involved in a crime can in rare cases make the forfeiture disproportionate to the gravity of the crime.[1]

---

[1] The cases that HCAT cites as quoting this footnote were likewise discussing it in the context of forfeiture. *See United States v. Beras*, 183 F.3d 22, 29 & n.5 (1st Cir. 1999); *Hawks v. Greene*, 2001 WL 1613889, at *14 (Tenn. Ct. App. Dec. 18, 2001).

That concern is not implicated here, where Congress has specified a range of amounts that can appropriately penalize each violation.

HCAT tries to blur this distinction by noting (Resp. Br. 55) that the forfeiture in *Bajakajian* was statutorily authorized—indeed, mandated.  But that misses the point.  When Congress authorizes (or even mandates) the forfeiture of property involved in a crime, it is not specifying a fixed *amount* or range of amounts; the amount of the forfeiture is whatever amount of property happens to have been involved in the crime, and the magnitude of that amount must therefore be reviewed in individual cases to ensure that it bears some relationship to the gravity of the crime.  But where, as here, Congress specifies a particular *amount* of money as a penalty for an offense, Congress has already made a determination that the penalty bears the appropriate relationship to the gravity of the offense, and it is rarely appropriate for courts to disturb that determination.

Of course, "rarely" is not "never."  The constitutional requirement of proportionality can in extreme cases invalidate monetary penalties chosen by Congress, just as it can in extreme cases invalidate penalties of incarceration chosen by Congress.  Notably, the Supreme Court held in *Solem v. Helm*,

463 U.S. 277 (1983), that the Eighth Amendment did not allow "a life sentence without possibility of parole" for a repeat "nonviolent felony" — in that case, "uttering a 'no account' check for $100." *Id.* at 279, 281.

But *Solem* is notable because it is the exception to the rule. The Supreme Court has in other cases "held that it did not violate the Eighth Amendment for a State to sentence a three-time offender to life in prison *with* the possibility of parole," *Ewing v. California*, 538 U.S. 11, 21 (2003) (plurality opinion) (emphasis added) (discussing *Rummel*); that a defendant could be "sentenced to two consecutive terms of 20 years in prison for possession with intent to distribute nine ounces of marijuana and distribution of marijuana," *id.* at 21-22 (discussing *Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam)); and that "a first-time offender convicted of possessing 672 grams of cocaine" could be "sentenced to life in prison without possibility of parole," *id.* at 23 (discussing *Harmelin v. Michigan*, 501 U.S. 957 (1991)). Summarizing these cases, the *Ewing* plurality described the Eighth Amendment as containing only "a 'narrow proportionality principle'" — one that overrides "'extreme'" penalty choices by the legislature, not ordinary ones. *Id.* at 20-21, 23. And the concurring Justices in *Ewing*, who provided the votes necessary for the judgment, did not join the plurality opinion only because they would have

rejected any proportionality review at all. *See id.* at 31-32 (Scalia, J., concurring in the judgment); *id.* at 32 (Thomas, J., concurring in the judgment).

It is these cases, not the multifactor analysis applied in the forfeiture context, that are most apposite to the question here: whether the Eighth Amendment overrides Congress's choice of the monetary penalty range for the illegal acts that the jury found HCAT had committed. It is mystifying for HCAT to contend that these cases "are wholly irrelevant to the analysis here" (Resp. Br. 68), given that *Bajakajian* expressly "adopt[ed] the standard of gross disproportionality articulated in" these "Cruel and Unusual Punishments Clause precedents" as the appropriate standard for the Excessive Fines Clause. 524 U.S. at 336 (citing *Solem*, 463 U.S. at 288, and *Rummel*, 445 U.S. at 271). HCAT bases its assertion on the Supreme Court's statement five years earlier, in *Alexander v. United States*, 509 U.S. 544, 558 (1993), that the Cruel and Unusual Punishments Clause and the Excessive Fines Clause are distinct. But the Court's point there was simply that proportionality review was applicable to monetary penalties under the Excessive Fines Clause even if it was inapplicable, under the Cruel and Unusual Punishments Clause, to "a sentence less than life imprisonment without the possibility of parole."

*Id.* And *Bajakajian*, five years later, made clear that the standard of proportionality under the two provisions is the same.

HCAT takes the same liberties with this Court's precedents as with the Supreme Court's. As noted above, this Court has repeatedly declined to apply to legislatively specified penalties, or penalty ranges, the multifactor standard it has applied to forfeitures. *Compare, e.g.*, *Suarez*, 966 F.3d at 385 (forfeitures), *with Newell Recycling*, 231 F.3d at 210; *Cripps*, 819 F.3d at 234; *and Gonzalez*, 420 F. App'x at 370 (legislatively specified penalties). Yet HCAT makes no attempt to distinguish *Cripps*; indeed, it does not even cite *Cripps*. It does attempt to distinguish *Newell Recycling*, on the theory that "[i]t was not [a False Claims Act] case" and that "it concerned an 'administrative fine' imposed by a federal agency" rather than "a court-imposed penalty." Resp. Br. 60. But both distinctions are immaterial: The Excessive Fines Clause applies the same way to penalties imposed by courts as to penalties imposed by agencies, and the same way to penalties imposed for False Claims Act violations as to penalties imposed for other violations. Indeed, *Cripps* and *Newell Recycling* involved penalties imposed under two different statutory schemes, which may be why HCAT tries to ignore *Cripps*.

HCAT's amicus, the U.S. Chamber of Commerce, at least addresses *Cripps*—and it appears to recognize, correctly, that both *Cripps* and *Newell Recycling* are fatal to HCAT's argument. That is presumably why it takes the bold approach of suggesting that the Court should simply ignore its precedents, on the theory that they were incorrectly decided under *Bajakajian*. But there is no reason to believe that the Court was unaware of *Bajakajian* when it decided those cases. The plaintiff's brief in *Cripps* discussed *Bajakajian*, *see* Pl. Br. 55-56, *Cripps*, 819 F.3d 221 (No. 15-30524), 2015 WL 5897497, at *55-56, as did a petition for rehearing en banc in *Newell Recycling*, *see* Pet. for Reh'g En Banc iii, 7, *Newell Recycling*, 231 F.3d 204 (No. 99-60694), 2000 WL 34468316, at *iii, *7. And in any event, *Cripps* and *Newell Recycling* are consistent with *Bajakajian* for the reasons discussed above.

HCAT also cites out-of-circuit cases (Resp. Br. 56) that have recited the multifactor standard for forfeitures in evaluating the constitutionality of civil penalties under the False Claims Act. But those cases are irrelevant in this Circuit, because this Court has correctly recognized in *Cripps* and *Newell Recycling* that the multifactor standard has no place in determining the constitutionality of legislatively specified penalties. In any event, four of the five decisions *upheld* the challenged penalties, and the only one that did not—

*United States ex rel. Grant v. Zorn*, 107 F.4th 782 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 2812 (2025), *and* 145 S. Ct. 2816 (2025) — is unpersuasive for the reasons discussed below and in our opening brief.

In short, HCAT offers no coherent way of distinguishing this Court's precedents, which correctly recognize that where Congress has specified the amount it regards as an appropriate penalty for a given violation, courts apply highly deferential review, not the multifactor standard they apply to forfeitures. The Eighth Amendment gives Congress wide discretion to choose the appropriate penalty, allowing courts to override that discretion only in truly extreme cases.

### B. Under The Correct Standard, The Penalties Specified By The False Claims Act Are Plainly Constitutional

Under the proper standard, there should be no question that the penalties specified by the False Claims Act fall comfortably within the broad discretion that the Eighth Amendment affords to Congress. As our opening brief explains, the False Claims Act and statutorily authorized regulations specify a penalty within a range from $5,500 to $11,000 for violations on or before November 2, 2015, and within a range from $13,946 to $27,894 for violations after that date, if assessed at the time of judgment here. *See* 31 U.S.C.

§ 3729(a)(1); 28 C.F.R. § 85.3(a)(9); *id.* § 85.5, tbl. 1.  Those penalties plainly

"bear some relationship to the gravity of the offense that [they are] designed

to punish," *Bajakajian*, 524 U.S. at 334— that is, the offense of knowingly sub-

mitting or causing the submission of a false claim seeking payment from the

federal government.  They are therefore consistent with the Eighth Amend-

ment.  None of HCAT's arguments establishes that those penalties are un-

constitutional as applied here.

**1.    Congress has authority to impose a distinct penalty
for each of HCAT's many violations**

HCAT does not argue that it would violate the Eighth Amendment to

impose a penalty of up to $27,894 for a single false claim.  Rather, HCAT

argues that it violates the Eighth Amendment to impose a penalty within the

statutorily authorized range for *each* of the claims that the jury found to have

been false.

But HCAT identifies no precedent that would cast doubt on Con-

gress's authority to specify a distinct and additional monetary penalty for

each violation of a federal law.  As the Seventh Circuit explained in address-

ing a related constitutional challenge, even a "huge number" produced by

multiplying a per-violation penalty by the defendant's number of violations

cannot be "evaluate[d] … separately from the penalty per violation." *United States v. Dish Network LLC*, 954 F.3d 970, 979 (7th Cir. 2020). The statutory penalty here is large because the number of violations found by the jury is large. HCAT's argument defies the admonition that "[s]omeone whose … penalty reaches the mesosphere only because the number of violations reaches the stratosphere can't complain about the consequences of its own extensive misconduct." *Id.* at 980.

HCAT's primary rationale seems to be that it only decided to break the law once, such that it cannot fairly be penalized for each of the many downstream violations resulting from that single corporate decision. *See, e.g.*, Resp. Br. 48 (arguing that HCAT made a "one-time decision[] about how to apply the applicable rules," as opposed to "21,844 discrete decisions to submit false claims"). But it is for Congress to decide how violations of the False Claims Act should be penalized, and Congress has chosen to attach a penalty to each discrete false claim, not just to an overall scheme of fraudulent conduct. The Eighth Amendment does not override that choice. To the contrary, the law commonly imposes more serious consequences for repeated or long-term violations than for one-time violations, even if the repeated or long-term violations stem from a single decision at the outset. A person who

- 15 -

made a single decision not to report certain income on his tax return, for example, could hardly complain that it was unfair to sentence him more severely for filing ten years' worth of false returns based on that decision than if he had stopped after a single year.

HCAT's amicus, the Chamber of Commerce, seems to suggest (Br. 16) that the penalty framework chosen by Congress is unconstitutional "in the context of the healthcare industry," given that "medical providers 'tend to submit a large number of relatively small claims each year.'" It is true that, when a healthcare industry participant breaks the law, the result can be a larger number of false claims—and thus a higher penalty— than might occur in an industry with different billing practices, where larger-dollar invoices are submitted to the government less frequently. But that is an inescapable consequence of Congress's choice to impose penalties on a per-claim basis. The Chamber's argument that that practice is unfair to the healthcare industry is properly directed to Congress, not to courts. The Eighth Amendment does not authorize courts to rewrite statutes so that they hew more closely to a judicial sense of fairness.

### 2. HCAT's relative culpability is irrelevant to its constitutional argument

HCAT also incorrectly suggests (Resp. Br. 47) that the penalty specified by the False Claims Act was unconstitutional because its conduct "posed no risk to patient health or safety" and simply "concern[ed] documentation practices vis-à-vis the Government."

As an initial matter, HCAT's argument seems to misunderstand the function of the False Claims Act. The Act serves to protect the public fisc against false or fraudulent claims, not to protect patients against substandard care. Of course, healthcare practices that jeopardize patient safety often do render claims false, because federal healthcare programs impose various requirements meant to protect patients. But a false claim is not somehow a less serious violation of the False Claims Act if it merely reflects a scheme to obtain reimbursements to which the claimant is not entitled; that is the basic gravamen of a False Claims Act violation.

HCAT's argument also underscores its erroneous view of the Eighth Amendment. Even if HCAT were correct that its conduct falls on the less culpable end of the scale of False Claims Act violations, that would bear on the district court's exercise of its discretion to select the appropriate penalty

amount within the range chosen by Congress.  It would not justify a departure below the statutorily specified range on the theory that the Eighth Amendment precludes even the minimum penalty.  HCAT's argument is equivalent to a criminal defendant's contention that he should have been sentenced below the mandatory minimum for the offense of which he was convicted, on the theory that his conduct was less culpable than that of some others for whom he believes the statute of conviction was *really* intended.  If a defendant made that argument, this Court would reject it out of hand, and the same result is appropriate here.

### 3. The ratio between the penalty and the government's losses is irrelevant

That leaves the argument the district court embraced: that the statutorily specified penalty is unconstitutional, as applied here, because it is too high in relation to the government's actual losses.  HCAT offers no stronger justification for that conclusion than the district court did.

Most importantly, HCAT appears to recognize that the due-process standard—under which the Supreme Court has articulated the ratio-based approach, in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and *State*

*Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) — is inapplicable here. As our opening brief explains (at 43-45), that is because constitutional claims that are "covered by a specific constitutional provision … must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process," *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997), and because the arbitrariness and fair-notice concerns that animated *Gore* and *State Farm* "are inapplicable" where Congress has specified the penalty for violating a given prohibition, *Vanderbilt Mortg.*, 692 F.3d at 374.

Instead of attempting to defend the application of the due-process standard in this context, HCAT argues that "[a]ssessing the ratio of penalty to actual damages is a well-established method of evaluating 'proportionality'" under *Bajakajian*. Resp. Br. 62 (quoting *Bajakajian*, 524 U.S. at 334). But *Bajakajian* makes no mention of the ratio between the challenged forfeiture and the government's actual damages (whatever that would mean in the context of a reporting offense, like the one at issue in *Bajakajian*). Nor does the multifactor standard that this Court and other courts have drawn from *Bajakajian*. It refers to "'the nature of the harm resulting from the defendant's conduct,'" *Suarez*, 966 F.3d at 385, but not in the sort of mathematical way

that the *Gore* and *State Farm* standard does—which makes sense, given that the *Bajakajian* standard is a loose and highly deferential one.

The only cases that HCAT cites for the proposition that a ratio-based approach can properly apply in this context (Resp. Br. 63) are False Claims Act cases. But as our opening brief explains (at 47-48), most of those decisions *upheld* the statutorily specified penalties. They identified a low ratio between penalties and damages as one reason for doing so but by no means suggested that a low ratio was necessary. *See United States v. Aleff*, 772 F.3d 508, 513 (8th Cir. 2014) (discussing the ratio only in a sentence concluding with the point that the penalty was "within the [False Claims Act]'s statutory limits"); *United States v. Rogan*, 517 F.3d 449, 454 (7th Cir. 2008) (discussing the ratio in explaining that the penalty would pass muster even as a jury award under the Due Process Clause, but noting that "one would think that a fine expressly authorized by statute could be higher than a penalty selected *ad hoc* by a jury"); *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387-390 (4th Cir. 2015) (citing the ratio as just one among several factors in upholding the penalty's constitutionality); *see also Morse Diesel Int'l, Inc. v. United States*, 79 Fed. Cl. 116, 129 (2007) (citing only a due-process case in applying the ratio, without addressing whether the due-process standard

applies under the Eighth Amendment).  None of these decisions considered the reasons for declining to import a test articulated in the context of the Due Process Clause into the context of the Excessive Fines Clause.

Moreover, the courts that decided two of those cases—*Rogan* and *Drakeford*—have in other cases upheld False Claims Act penalties at a very high ratio to actual damages.  *See Stop Ill. Health Care Fraud, LLC v. Sayeed*, 100 F.4th 899, 906-908 (7th Cir. 2024) (upholding penalties more than forty times actual damages for one defendant), *reh'g denied*, 2024 WL 2785312 (7th Cir. May 30, 2024); *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 405-410 (4th Cir. 2013) (upholding penalties where there were no proven damages).  So has the Eleventh Circuit.  *See Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1314-1316 (11th Cir. 2021) (upholding penalties more than 1500 times the amount of actual damages).

That leaves only the Eighth Circuit, which in *Grant* did adopt a ratio-based approach to the constitutionality of False Claims Act penalties.  107 F.4th at 798.  But the *Grant* decision, like the other decisions on which HCAT relies, does not actually confront the reasons why a standard derived from the Due Process Clause should not be imported into the Excessive Fines Clause.  Rather, as our opening brief explains (at 46-47), the reason the

Eighth Circuit so easily accepted the assumption "that cases analyzing punitive damages under the Due Process Clause are instructive in analyzing punitive sanctions under the Excessive Fines Clause," 107 F.4th at 798, was that no party had challenged it (indeed, the relator had wrongly "assert[ed]" the relevance of the Due Process Clause, *id.*). The government did not participate in *Grant* until the rehearing stage, because neither the district court nor the court of appeals had "notified the government that the constitutionality of an Act of Congress had been 'drawn in question,'" as 28 U.S.C. § 2403(a) requires. Letter from Sarah M. Harris, Acting Solic. Gen., to the Hon. Mike Johnson, Speaker, U.S. House of Reps. 2 (Feb. 24, 2025), https://perma.cc/BU34-UGUC. And the government then declined to seek certiorari in part because the Eighth Circuit panel "did not have the benefit of the government's argument that due-process precedents were inapposite to the Excessive Fines Clause analysis." *Id.*

Aside from the inadequate nature of the briefing before the panel, *Grant* should also be taken with a grain of salt because the number of Eighth Circuit judges who have publicly cast doubt on its analysis (four) is twice the number who joined it (two). One member of the panel dissented from the majority's Excessive Fines Clause analysis, 107 F.4th at 801-805 (Smith,

C.J., concurring in part and concurring in the judgment), and another three noted their dissents from the denial of rehearing en banc, *United States ex rel. Grant v. Zorn*, 2024 WL 4456550 (8th Cir. Oct. 9, 2024) (Erickson, Stras, and Kobes, JJ.).

Aside from *Grant*, HCAT can muster only two district-court opinions declining to impose penalties within the range required by the False Claims Act—*United States ex rel. Fesenmaier v. Cameron-Ehlen Group, Inc.*, 715 F. Supp. 3d 1133, 1157-1165 (D. Minn. 2024), *appeal dismissed*, 2024 WL 4026210 (8th Cir. July 31, 2024), and *United States ex rel. Stearns v. Lane*, 2010 WL 3702538, at *4 (D. Vt. Sept. 15, 2010)—out of decades' worth of litigation under the modern False Claims Act. But *Fesenmaier*, like the decisions discussed above, did not confront the reasons why the ratio-based standard developed under the Due Process Clause should not be imported into the Excessive Fines Clause. *See* 715 F. Supp. 3d at 1158. The government declined to appeal that ruling only because it determined that the defendants would "'be unable to satisfy even the compensatory damages' award" in that case, "'much less any penalt[y],'" and thus "entered into a settlement … on the basis of the defendants' ability to pay." Letter from Elizabeth B. Prelogar, Solic. Gen., to the Hon. Mike Johnson, Speaker, U.S. House of Reps. 3 (July 24, 2024). And

the analysis in *Stearns* was equally paltry—unsurprisingly, given that that was a landlord-tenant suit over twelve payments' worth of $69 each, in which the relator herself had "initiated the fraud" and "induced [the defendant] to commit the fraud."  2010 WL 3702538, at *4-5.  That these are the strongest authorities HCAT can muster speaks volumes about the deficiency of its argument.

## CONCLUSION

This Court should reverse the district court's ruling as to the Excessive Fines Clause. If the Court rejects HCAT's other challenges to the judgment, it should remand for the imposition of the statutorily required civil penalty.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

RYAN RAYBOULD
  *United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH

 */s/ Daniel Winik*
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*
  *daniel.l.winik@usdoj.gov*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,016 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Book Antiqua, a proportionally spaced typeface.

*/s/ Daniel Winik*
Daniel Winik